Generated: 12/05/2018

| | | |
|---|---|---|
| AOC-S-105    Sum Code: CI<br>Rev. 7-99<br><br>**Commonwealth of Kentucky**<br>**Court of Justice**<br>CR 4.02; Cr Official Form 1 | <br>**Civil Summons** | Case Number  **18-CI-00436**<br>Court   CI<br>County  MARSHALL |

*Plaintiff*, HARMON, ZALMICO  , ET AL VS. KENTUCKY HIGH SCHOOL ATHLETIC A, *Defendant*

**RECEIVED**

DEC 1 3 2018

KENTUCKY HIGH SCHOOL ATHLETIC ASSOC.,
SERVE:  CHAD COLLINS, ESQ.
2280 EXECUTIVE DRIVE
LEXINGTON              KY      40505

The Commonwealth of Kentucky to the above-named Defendant(s):

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons.  Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, TIFFANY FRALICX GRIFFITH

By _____, DC
Date: 12/05/2018

Proof of Service
[ ] This Summons was served by delivering a true copy and the Complaint (or other initiating document)
To: _____

[ ] Not Served because: _____

Date: _____, 2_____                                Served by: _____

CI    18-CI-00436

HARMON, ZALMICO  , ET AL VS. KENTUCKY HIGH SCHOOL ATHLETIC A



COMMONWEALTH OF KENTUCKY
MARSHALL CIRCUIT COURT
CIVIL ACTION NUMBER: 18-CI-_____

Z███ H███████, a minor                                          **PLAINTIFF**
by and through his Parent and
Next Friend, ZALMICO HARMON

v.

## VERIFIED COMPLAINT AND DEMAND FOR EQUITABLE RELIEF

KENTUCKY HIGH SCHOOL ATHLETIC ASSOCIATION              **DEFENDANT**

> **SERVE:**    **Commissioner Julian Tackett**
> **Kentucky High School Athletic Association**
> **2280 Executive Drive**
> **Lexington, Kentucky 40505.**
> **By Certified Mail, Return Receipt Requested**
> **Pursuant to CR 4.04(4)**
>
> and
>
> **Agent for Service of Process**
> **Chad Collins, Esq.,**
> **2280 Executive Drive**
> **Lexington, Kentucky 40505.**
> **By Certified Mail, Return Receipt Requested**
> **Pursuant to CR 4.04(4)**

Comes now the Plaintiff, Z██ H█████, a minor, by and through his Parent and Next

Friend, Zalmico Harmon, each by and through counsel, and for this Verified Complaint against

the Defendant, states as follows:

## JURISDICTION, VENUE AND APPEAL

1.      At all times relevant to these causes of action, the Plaintiff, Z██ H██████, a

minor, was and remains a resident of the Commonwealth of Kentucky, residing at 1635 B

Walnut Street, Benton, Marshall County, Kentucky 42025.

2.      At all times relevant to these causes of action, the Plaintiff, Zalmico Harmon, as

1

Parent and Next Friend of Z█H█████, a minor, was and remains a resident of the

Commonwealth of Kentucky, residing at 1635 B Walnut Street, Benton, Marshall County,

Kentucky 42025. Plaintiff, Zalmico Harmon, as Parent and Next Friend of Z█ H█████, brings

this action on behalf of the minor pursuant to CR 17.03, with the Affidavit required by KRS

387.300(1), incorporated into this Verified Complaint.

     3.     At all times relevant to these causes of action, the Defendant, Kentucky High

School Athletic Association (hereafter, KHSAA), was and remains the Agent of the Kentucky

Board of Education "to manage interscholastic athletics at the middle and high school level in the

common schools, including a private school desiring to associate with KHSAA or to compete

with a common school." 702 KAR 7:065, and the KHSAA Constitution, Article III, Section

1(a). In accordance with CR 4.04, "by serving a partner or managing agent of the partnership or

an officer or managing agent of the association, or an agent authorized by appointment or by law

to receive service on its behalf." As such, service is proper upon the Commissioner of the

KHSAA, as its "executive officer" in accordance with the KHSAA Constitution, Article V,

Section 3(c), and its Agent for Service of Process, Chad Collins, Esq., 2280 Executive Drive,

Lexington, Kentucky 40505, by agreement.

     4.     Plaintiff requests a Declaration of Rights, pursuant to KRS 418.040, to make an

interpretation as to the constitutionality of KHSAA Bylaw 6, Section 3(d), which provides as

follows:

> "A waiver of the period of ineligibility is not required to be granted for those students
> satisfying one of the exceptions in Sec. 2: ...
>
>     d)    ***If the change in schools is motivated in whole or part by a desire to***
>          ***participate in athletics at the new school***, including but not limited to:

(1)     If a student participates on a school team that is coached by a coach associated in that same sport at a high school, and the student then transfers to the member school where the coach is employed (paid or volunteer at any level);

(2)     If a student receives instruction (paid or unpaid) from a coach associated in that same sport at a high school without expressed consent of the enrolled school, and the student then transfers to the member school where the coach is employed (paid or volunteer at any level);

(3)     If a student participates on a nonschool (i.e. AAU, American Legion, club settings, summer program, etc.) team that is affiliated with or coached by a coach associated in that same sport at a member school and the student then transfers to the member school where a coach is employed (paid or volunteer at any level); or

(4)     If the student resides with any athletic coach or any other member of the school staff or team member (including parents and boosters)."

(constitutionally defective provision in bold, italics).  Because of the Defendant's opposition to the Plaintiff's interpretation as to both the application of and the legal effect of the foregoing Bylaw, an actual, justiciable controversy exists which affects the specific, actual rights of the parties, hereto.  To that end the Marshall Circuit Court has jurisdiction over such matter.

5.      As referenced in the preceding Paragraph and in the course of this action, the Plaintiff will allege constitutional defects with the aforementioned KHSAA Bylaw which does not contain sufficient safeguards to protect the due process interests of affected individuals from arbitrary and capricious enforcement by Defendant.  As such,  KHSAA Bylaw 6, Section 3(d) is unconstitutional under the Fourteenth Amendment to the United States Constitution.  In accordance with KRS 418.075(1), Plaintiff hereby provides notice of these constitutional defects to the Attorney General of the Commonwealth of Kentucky.

3

6.     This action arises out of a Final Order issued by the KHSAA on November 15, 2018, that impacts the rights of the Plaintiff within the Commonwealth, from which an Appeal is permitted by KRS 13B, and is an original action pursuant to KRS 23A.010.

7.     As there is personal jurisdiction over all of the parties and that the Plaintiff's causes of action arise out of events which occurred in the Commonwealth of Kentucky, this Court has jurisdiction over both the parties and the subject matter of this action.  As the enabling statue implicated in this matter does not identify a specific venue, this action may be brought in the Marshall Circuit, Kentucky in accordance with KRS 13B.140(1).

8.     The Plaintiff seeks equitable relief which is within the province of the Marshall Circuit Court and seeks damages in excess of the minimum jurisdictional requirements of the Marshall Circuit Court.

**COUNT I**
**ORIGINAL ACTION AND APPEAL OF FINAL ORDER OF KHSAA**

9.     This is an Original Action and appeal of a Final Order of the Defendant dated November 15, 2018, which is attached hereto as the Final Order, *Exhibit A*.  In accordance with KRS 13B.140(1), this Final Order "shall be subject to judicial review in accordance...by filing a petition in the Circuit Court of venue...of the county in which the appealing party resides...".

10.    In accordance with KRS 13B.140(2), the Plaintiff has "exhausted all administrative remedies available within the agency whose action is being challenged," and as acknowledged by the KHSAA, by implication, as set forth in the last paragraph of the Final Order, *Exhibit A*.

11.    Plaintiff respectfully requests the prompt transmission of the "original or a

4

certified copy of the official record of the proceeding under review" in accordance with KRS 13B.140(3), forthwith and without delay, lest the rights of the Parties be adversely impacted.

12.     In accordance with KRS 13B.140(4)(c), the Plaintiff respectfully requests a "stay a final order pending the outcome of the review...be ordered by the Marshall Circuit Court, immediately allowing the Plaintiff, Z███ H████, a minor, to participate in high school athletics, forthwith and immediately.

13.     Following the Plaintiff's application to the KHSAA for a determination as to his eligibility to participate in high school athletics, on September 28, 2018, a Hearing was conducted by the KHSAA Hearing Officer relative to Plaintiff's son, Z███ H████'s, eligibility to participate in high school athletics at Marshall County High School for the 2018-2019 school year (see Recording of Hearing, *Exhibit B*).

14.     On October 16, 2018, Hearing Officer Edmund Karem issued a Recommended Order declaring Z███ H████ ineligible to participate in high school athletics for the 2018-2019 school year. The Recommended Order held as follows: "It is recommended that a waiver of Bylaw 6 not be granted. It is recommended that the appeal be denied; that the decision of the Ruling Officer be affirmed; and that Z███ H████ remain ineligible to participate in interscholastic athletics until March 5, 2019, with respect to the issues of the Bylaw under consideration."(see Hearing Officer's Recommended Order, *Exhibit C*).

15.     Following the filing of exceptions by the Plaintiff, on November 15, 2018, KHSAA Commissioner Julian Tackett set aside the Hearing Officer's Recommended Order and issued Findings of Fact and Conclusions of Law, declaring Z███ H████ to be "INELIGIBLE to participate in interscholastic athletics at the varsity level at Marshall County High School - as it

relates to Bylaw 6 for one year from the date of his last varsity participation, which would be March 6, 2019 (see Final Order, *Exhibit A*).

16.   In the Final Order, KHSAA Commissioner reversed the Hearing Officer and determined that Z█ H█████had made a Bona Fide Change in Residence, within the meaning of KHSAA Bylaw 6, Section 2 (see Numbered Final Order, Paragraphs 28-30, *Exhibit D*). However, KHSAA Commissioner Tackett affirmed the ruling of the Hearing Officer, determining that Z█ H████'s transfer to Marshall County High School was motivated, "in whole or in part" by athletics, as discretionarily prohibited by KHSAA Bylaw Six, Section 3 (see Numbered Final Order, Paragraph 37, *Exhibit D*). This Original Action and Appeal followed.

17.   The Final Order of the Defendant, KHSAA, was issued in violation of constitutional provisions in contravention of KRS 13B.150(2)(a), as follows:

A.   KHSAA Bylaw 6, Section 3(d) does not contain sufficient safeguards which will protect the due process interests of affected individuals, including the Plaintiff and, as such, is unconstitutional under the Fourteenth Amendment to the United States Constitution.

B.   As it is written, KHSAA Bylaw 6, Section 3(d) lends itself to erroneous, arbitrary and capricious interpretation by the KHSAA to the detriment of others, including the Plaintiff.

C.   As it is written, KHSAA Bylaw 6, Section 3(d) infringes upon the constitutional right of Plaintiff to parent his child.

D.   While Plaintiff was provided with an opportunity to be heard, he was not provided with Notice of Evidence to be utilized by the KHSAA against him, in violation of the KHSAA's own Due Process Rules, Section 2(f)(1) and KRS 13B.090(3), particularly, the *Paducah Sun* article referenced, infra, (see Paducah Sun Article, *Exhibit E*). This is particularly disturbing in that six out of fifteen of the Commissioner's Findings of Fact as set forth in the Final Order were based on the content of such article.

18.   The Final Order of the Defendant, KHSAA, was issued without support of

6

substantial evidence on the whole record in contravention of KRS 13B.150(2)(c), as follows:

    A.    With the exception of the first two sentences of Paragraph 9, of the Final Order, the remainder of said Paragraphs recites information which is not relevant to the KHSAA is not relevant to the inquiry of the KHSAA, as it considered irrelevant and incompetent evidence. "Case BL-6-1- What is the transfer rule (Bylaw 6)?," from the KHSAA Bylaws explicitly provides as follows: "Bylaw 6 contains restrictions relative to students changing schools after they have BOTH been in grade nine AND played for a member school at the varsity level. A student who has not yet been in grade nine or has not yet participated at the varsity level has no restrictions on transfer within Bylaw 6."

    B.    Findings of Fact Paragraphs numbered 10, 11, 12, 13, 14, 15 and 16, are based upon an interview conducted by a Paducah Sun Reporter, Edward Marlowe, with the Petitioner, Zalmico Harmon, and published in said newspaper on May 25, 2018 (see Numbered Final Order, Exhibit D and Paducah Sun Article, *Exhibit E,* Note: the quality of the photostatic reproduction of the article is consistent with that received from the KHSAA by virtue of an Open Records Request).

        The information contained in such newspaper article is impermissible hearsay as prohibited from KRS 13B proceedings by KRS 13B.090(1), KRE 402 and the common law of the Commonwealth of Kentucky.

19.    The Final Order of the KHSAA was arbitrary, capricious, and characterized by abuse of discretion, in contravention of KRS 13B.150(2)(d) and was deficient as otherwise provided by law, in contravention of KRS 13B.150(2)(g), as follows:

    A.    Plaintiff does not dispute the factual findings found in Paragraphs 1 through 8 of the Final Order (see Numbered Final Order, *Exhibit D*).

    B.    As Findings of Fact Paragraphs numbered 9, 10, 11, 12, 13, 14, 15 and 16, constituting fifty percent (50%) of such Findings, contain incompetent, irrelevant and inadmissible information, the Conclusions of Law based upon those Paragraphs, specifically Paragraphs 32, 33, 34 and 35, are likewise arbitrary, capricious and an abuse of discretion (see Numbered Final Order, *Exhibit D*).

    C.    Conclusions of Law numbered 18 - 31 contain the KHSAA's recitation of its perception of the law to be applied as to this matter, and as such are not

derivative of any Findings of Fact (see Numbered Final Order, *Exhibit D*).

D.   The Conclusion of Law that addresses anything other than the incompetent evidence referenced in the preceding paragraphs, Paragraph 36, references Plaintiff's concerns relative to academics (see Numbered Final Order, *Exhibit D*).

E.   The conclusion of the Commissioner as found in Paragraph 37, is arbitrary, capricious and an abuse of discretion (see Numbered Final Order, *Exhibit D*).

20.   Based upon the foregoing and pursuant to KRS 13B.150(2), Plaintiff requests that this Court reverse the Final Order of the KHSAA, in whole or in part, and remand the case for the Defendant to enter a Final Order declaring the Plaintiff, Z██ H██████, to be eligible to participate in high school athletics contrary to the Final Order and upon the bases that said Final Order, was in violation of constitutional provisions [KRS 13B.150(2)(a)]; without support of substantial evidence on the whole record [KRS 13B.150(2)(c)]; arbitrary, capricious, or characterized by abuse of discretion [KRS 13B.150(2)(d)]; and/or deficient as otherwise provided by law [KRS 13B.150(2)(g)], and from each of which the Plaintiff's rights have been impaired and damaged.

## COUNT II
### Request for Equitable Relief

21.   Plaintiff, H██████, hereby reaffirms, reiterates and incorporates all of those allegations contained in Count I and which are consistent with Count II, as if fully set forth herein.

22.   That the Plaintiff's rights have been violated by the Defendant and the Plaintiff has suffered, is suffering and will continue to suffer immediate, irreparable injury, loss and/or damage as a direct and causal result of the actions of the Defendant.

8

22.     The irreparable harm to the Plaintiff has occurred, is occurring and will occur prior to trial, and a final judgment favorable to the Plaintiff will not provide him with adequate relief.

23.     Plaintiff requests that this court utilize its powers in equity pursuant to CR 65 in order to protect the Plaintiff from gross injustice by virtue of the entry of Temporary Injunctions and Permanent Injunctions, as may be more particularly described in a Motion or Motions for same, reversing the Final Order of the Defendant, KHSAA.

### COUNT III
### Request for Declaratory Relief

24.     Plaintiff, H███████, hereby reaffirms, reiterates and incorporates all of those allegations contained in Counts I and II and which are consistent with Count III, as if fully set forth herein.

25.     Plaintiff requests a Declaration of Rights, pursuant to KRS 418.040, to make an interpretation as to the constitutionality of KHSAA Bylaw 6, Section 3(d), which provides as follows:

"A waiver of the period of ineligibility is not required to be granted for those students satisfying one of the exceptions in Sec. 2: ...

      d)    ***If the change in schools is motivated in <u>whole or part</u> by a desire to participate in athletics at the new school,*** including but not limited to:

           (1)    If a student participates on a school team that is coached by a coach associated in that same sport at a high school, and the student then transfers to the member school where the coach is employed (paid or volunteer at any level);

           (2)    If a student receives instruction (paid or unpaid) from a coach associated in that same sport at a high school without expressed consent of the enrolled school, and the student then transfers to the

9

member school where the coach is employed (paid or volunteer at any level);

(3)     If a student participates on a nonschool (i.e. AAU, American Legion, club settings, summer program, etc.) team that is affiliated with or coached by a coach associated in that same sport at a member school and the student then transfers to the member school where a coach is employed (paid or volunteer at any level); or

(4)     If the student resides with any athletic coach or any other member of the school staff or team member (including parents and boosters)."

(emphasis upon constitutionally defective provision).

26.     Plaintiff contends that the unfettered discretion granted to the KHSAA by virtue of KHSAA Bylaw 6, Section 2(d), is violative of the due process rights of the Plaintiff's minor child, in that the KHSAA may deprive a child of participation in certain athletic activities in accordance with a provision which has no measurable standard of proof.

27.     Under the current incarnation of KHSAA Bylaw 6, Section 2(d), the KHSAA may deny a child participation in KHSAA sanctioned athletics if only "part" of the reason for the change in schools is motivated by athletics.

28.     The determination of whether a parent changes a school for a child is never based upon one single factor, but rather a panoply of same. Under the current incarnation of KHSAA Bylaw 6, Section 2(d), if the KHSAA perceives only a scintilla of information which it considers to be indicative that a school determination by a parent and child is based upon athletics, it may arbitrarily and capriciously prevent the child from participating in same.

29.     The KHSAA disputes the Plaintiff's interpretation of the constitutional invalidity of KHSAA Bylaw 6, Section 2(d).

10

30.     As such and based upon the foregoing, the Plaintiff requests a Declaration of Rights, pursuant to KRS 418.040, to make an interpretation as to the constitutionality of KHSAA Bylaw 6 Section 2(d).

31.     Because of the Defendant's opposition to the Plaintiff's allegation of unconstitutionality as applied to KHSAA Bylaw 6 Section 2(d), an actual, justiciable controversy exists as between these Parties and the Plaintiff requests that this Court determine such controversy.

## COUNT IV
### Damages

32.     Plaintiff, H█████, hereby reaffirms, reiterates and incorporates all of those allegations contained in Counts I, II, III and which are consistent with Count IV, as if fully set forth herein.

33.     As a result of the Defendant's actions as referenced in Counts I, II and III, the Plaintiff has sustained financial loss and has been financially damaged by Defendant in an amount in excess of the jurisdictional minimum requirements of the Marshall Circuit Court.

11

**WHEREFORE**, the Plaintiff demands as follows:

A.    Pursuant to KRS 13B.150(2), Plaintiff requests that this Court reverse the Final Order of the Defendant, KHSAA, and remand the case for the Defendant to enter a Final Order declaring the Plaintiff's son, Z███ H███████, to be eligible to participate in high school athletics upon the bases that said Final Order, was in violation of constitutional provisions [KRS 13B.150(2)(a)]; without support of substantial evidence on the whole record [KRS 13B.150(2)(c)]; Arbitrary, capricious, or characterized by abuse of discretion [KRS 13B.150(2)(d)]; and/or deficient as otherwise provided by law [KRS 13B.150(2)(g)].

B.    For Temporary Injunctions to issue against all Defendant, forthwith;

C.    For Permanent Injunctions to issue against all Defendant, forthwith;

D.    For a Declaration of Rights in accordance with KRS 418.040, declaring KHSAA Bylaw 6, Section 2(d) to be unconstitutional;

E.    A judgment against the Defendant in a fair and reasonable amount of compensatory damages in excess of the jurisdictional minimum requirements of the Marshall Circuit Court;

F.    For Post-Judgment interest at the legal rate;

G.    For Summons to issue as directed in the caption;

H.    For its costs and expenses in this action, same to include Attorney's Fees as may be permitted by the law of the Commonwealth of Kentucky; and

I.    For any and all other relief to which it may appear entitled.

Respectfully submitted,

William C. Adams, III
Attorney at Law
291 Main Street; P.O. Box 1419
Murray, Kentucky 42071
Telephone: (270) 753-1292
Telefax: (270) 753-5648
Attorney for Plaintiff

12

## VERIFICATION AND AFFIDAVIT PURSUANT TO KRS 387.300(1)

Comes now the Affiant, Zalmico Harmon, by and through counsel, and for his

Verification and Affidavit pursuant to KRS 387.300(1), states as follows:

    1.    My name is Zalmico Harmon and I reside at 1635 B Walnut Street, Benton,

Marshall County, Kentucky 42025.

    2.    I am free from disability and am the father of Z███ H██████, who also resides at

1635 B Walnut Street, Benton, Marshall County, Kentucky 42025.

    3.    In my capacity as Parent and Next Friend of Z███ H██████, a minor, state that I

have read the foregoing Verified Complaint, and further state that the information contained

therein is true and factual to the best of my knowledge and belief.

Further the Affiant saith naught on this the 5th day of December, 2018.

 

                                 _Zalmico Harmon_
                               ZALMICO HARMON, as Parent and Next Friend
                               of Z███ H██████, a minor

STATE OF KENTUCKY

COUNTY OF CALLOWAY

    Subscribed, sworn to and acknowledged before me by the said Zalmico Harmon, as

Parent and Next Friend of Z███ H██████, a minor, on this the 5th day of December,

2018. My Commission Expires: June 12, 2020.

                                Notary Public - State at Large

## <u>CERTIFICATE OF SERVICE</u>

I, William C. Adams, III, do hereby certify that a true and accurate copy of the foregoing

was sent by ordinary U.S. Mail and as specifically set forth below to all of the following on this

the 5th day of December, 2018:

Hon. Andrew Beshear                          Hon. Andrew Besheaar
Kentucky Attorney General                    Kentucky Attorney General
1024 Capital Center Drive; Suite 200         118 Capitol Building; 700 Capital Avenue
Frankfort, KY 40601                          Frankfort, KY 40601

Chad Collins, Esq.,
Kentucky High School Athletic Association
2280 Executive Drive
Lexington, Kentucky 40505

and the Original filed with the Marshall Circuit Court for Service of Process in accordance with

the Caption.

William C. Adams, III

14

 **Kentucky High School Athletic Association**
2280 Executive Drive ° Lexington, KY 40505 ° www.khsaa.org ° (859)299-5472 (859)293-5999 (fax)

November 15, 2018

Zalmico Harmon
1635 B Walnut Street
Benton, KY 42025

Dear Mr. Harmon:

In accordance with KRS Chapter 13B, the Hearing Officer's Recommended Order for Z███ H█████ — Case #2050, along with the filed exceptions have been considered by the Commissioner.

After considering the record, I hereby set aside the Hearing Officer's Recommended Order and issue the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Z██ H██████ was born on ████████ 2002. According to the testimony of the H█████ family, Z██ formally began the enrollment process at Marshall County High School on May 16, 2018. According to Adair County, Z██ finished the school year at Adair County and withdrew on May 25, 2018. Z██ last participated in varsity athletics at Adair County High School on March 5, 2018.

The Transfer Form in this matter indicates the date of enrollment for Z██ was June 1, 2016. However, Marshall County Athletic Director Mike Johnson testified that he made an error and put the wrong date. He further testified the correct date was May 16, 2018. He further submitted a letter marked Exhibit #3 to the hearing in support of that statement.

Z██'s father, Zalmico Harmon Sr. testified that he and Z██ moved to 1635 B., Walnut Street located in Benton, Kentucky (Marshall County High School District) on May 16, 2018. They have continued to live there since this time. Mr. Harmon further testified he and Z██ moved from 120 Campus Lane, Apt. 200 located in Columbia, Kentucky (Adair County High School District). The lease for the residence at 120 Campus Lane was transferred to Mr. Harmon's oldest son, Zalmico Harmon Jr. This lease is marked as Exhibit #1 to the hearing.

When asked why the change in schools, Mr. Harmon testified that Z██ required an academic situation that would allow him to graduate from high school in three years as opposed to the traditional four-year program. When Z██ initially enrolled at Adair County, he also enrolled in certain on-line courses that were supposed to help facilitate a three-year graduation.

Mr. Harmon testified that he had no issue with the athletic program at Adair County. However, he did indicate there were issues he brought to the attention of the school principal. After the first few weeks at Adair County, Mr. Harmon testified he learned the on-line courses in which Z██ was enrolled, would not be accepted by the NCAA. As a result, Z██'s class schedule was changed while still working towards graduation in three years.


EXHIBIT
A

At the end of the year, Z███ took the End of Course ("EOC") exam in English II and while he received an "A" in the class, he did not get the required score to enable graduation in three years. Per state requirements, a student must get a 154 on the English II EOC. Z███ scored a 150. As a result, Z███would need to re-take the exam to get the requisite score. Z███finished the year with a 3.7 GPA.

When asked how the family selected Marshall County High School, Mr. Harmon testified that proximity to an airport was important to any move. Mr. Harmon is a travelling nurse and works every other weekend in the D.C.-Maryland area. Until recently, Mr. Harmon testified he preferred driving to the D.C. – Maryland area for this employment. However, a recent motor vehicle accident caused him to decide to fly as he felt it was a safer. As a result, Mr. Harmon testified that they considered the Lexington, Louisville, and Paducah areas as they were near an airport.

Mr. Harmon testified that he was familiar with Marshall County High School because Z███ had played there in the past. Mr. Harmon also testified he contacted the school and met with Principal Patricia Greer on April 2, 2018. At that time, Mr. Harmon stated they inquired and learned about the academic programs at the school and the desire to graduate in three years (2020) continued to be a focus of attention.

Mr. Harmon testified that it was important to have his son challenged academically. He mentioned that Z███ had been in private schools most of his life. Z███ attended the 6th grade at Mercy in Maryland. For the 7th grade, Mr. Harmon testified Z███ transferred to Lighthouse Christian in Tennessee so he would be able to play high school basketball as a 7th grader. For the 8th grade, Mr. Harmon testified Z███ transferred to Bowling Green Middle School because the coach at Lighthouse Christian was no longer there. Following the 8th grade, Z███ transferred to Adair County High School. When asked why Z███ left Bowling Green, Mr. Harmon stated that it was because the coach at Bowling Green High School (where he was playing) had left that position with the school.

The record contains a newspaper article titled "H█████ Headed to Marshall County? Not Just yet, says dad". The article was written by Edward Marlowe of the Paducah Sun. According to the testimony of Mr. Harmon, the article was published on May 25, 2018. During the hearing in this matter, Mr. Harmon acknowledged doing an interview with Mr. Marlowe before the article was published.

Mr. Harmon testified that at the time of the subject matter interview for the May 25th article that he had not yet made a decision about enrollment for Z███. He further stated he did not agree with everything Mr. Marlowe wrote, but Mr. Harmon did acknowledge making several statements attributed to him as a part of the interview.

Included in the May 25th article, Mr. Harmon was quoted as saying: "The problem I have with this is, I'm a little apprehensive about how...as a freshman...(Z███) led the state in scoring". Mr. Harmon took no issue with the accuracy of this statement.

The article continued quoting Mr. Harmon as saying: "Played for USA Basketball, Plays on the EYBL circuit. I understand the competitive coaches, but the players (Z███) played against with USA Basketball and EYBL? It's a whole different level. And he's over (1,500) high school points already." Mr. Harmon agreed he made this statement.

Page 2 of 7

The May 25th article continues by quoting Mr. Harmon as stating: "I don't want him to be in a situation, where, you know, as a freshman...he was good. And after a summer (like this)... he's obviously going to be a much better player. I don't want him to come into a situation where it's more about the coach." When asked to confirm this statement, Mr. Harmon indicated that he had to have said something similar to that.

Also a part of the May 25th article was a list of schools Mr. Harmon indicated that were under consideration for Z▮▮▮ including Marshall County, McCracken County, Scott County, Bowling Green as well as a prep route. In the hearing, Mr. Harmon confirmed these schools as well as Trinity, Ballard, IMG, Huntington Prep and others. However, Mr. Harmon also stated that he had not visited any of these schools. Marshall County High School was the only school that the academic curriculum was reviewed or visited.

During the hearing in this matter, Mr. Harmon acknowledged whoever the coach is at the school is a consideration when considering a school. This was in direct response to questions about the May 25th article.

## CONCLUSIONS OF LAW

The body of law that the Commissioner is required to consider in reaching conclusions of law is contained in the Kentucky High School Athletic Association Handbook that includes the Bylaws of the Kentucky High School Athletic Association and the Due Process Procedures. The issues in this matter specifically include:

### Bylaw 6. Transfer Rule

Sec. 1) DOMESTIC STUDENT TRANSFER
a) Any student who has been enrolled in grades nine (9) through twelve (12) and has participated in any varsity contest in any sport at any school while maintaining permanent residence in the United States or a United States territory following enrollment in grade nine (9) and who then transfers schools shall be ineligible for interscholastic athletics at the varsity (first team) level in any sport for one year from the date of last participation in varsity interscholastic athletics.
b) Any student who has been enrolled in grades nine (9) through twelve (12) and has participated in any varsity contest in any sport at any school following enrollment in grade nine (9) who has been previously granted eligibility under the provisions of Bylaw 7 or Bylaw 8 and who then transfers schools shall be ineligible for interscholastic athletics at the varsity (first team) level in any sport for one year from the date of last participation in varsity interscholastic athletics.
c) The Ruling Officer and Commissioner have discretion (but are not required) to waive the period of ineligibility set forth above if one or more of the following exceptions in Sec. 2 has been met.
d) A student awaiting a ruling regarding eligibility under the provisions of this bylaw, shall not be eligible to compete, including practice, at any level during the periods defined by Bylaw 23.

Case Situation BL-6-2 actually explains why the member schools of the Association (as well as virtually every other state association) have chosen to adopt the transfer rule. It provides:

Page 3 of 7

**Case BL-6-2 Why is there a transfer rule?**

Nearly every state has a transfer rule to protect the integrity of the interscholastic program. These rules are necessary for several reasons, including but not limited to, the following principles:

(1)  these rules prevent and deter transfers due to recruiting or athletic reasons;

(2)  these rules protect the opportunities of bona fide resident students;

(3)  these rules provide a fundamentally fair and equitable framework for athletic competition in an academic setting;

(4)  these rules provide uniform standards for all schools to follow;

(5)  *these rules support the educational philosophy that athletics is a privilege which should not assume a dominant position in a school's program;*

(6)  these rules keep the focus of educators and students on the fact that students attend schools to receive an education first, and participate in athletics second;

(7)  these rules maintain the fundamental principle that a high school student should live at home with parents or a custodian in the event of parental death or incapacitation, and attend school in the school district in which they reside;

(8)  these rules reinforce the view that a family is a strong and viable unit and as such is the best place for students to live while attending high school;

(9)  these rules serve as a deterrent to students running away from, or avoiding discipline that has been imposed; and

*(10) these rules prevent manipulation of a residence change or other exception solely or primarily for the purpose of interscholastic athletics participation and serve to ensure the integrity of the rules adherence process.*

Section 2 of Bylaw 6 contains a list of exceptions that allow for a waiver of the one-year period of ineligibility required by Section 1. The exceptions include: a) Reassignment by board of education; b) Transfer from non-member school; c) Military assignment; d) Bona fide change in residence; e) Divorce; f) Change in sole custody; g) Change in joint custody; h) Death; i) Boarding schools; and j) Cessation of school program.

Section 3 of Bylaw 6 contains restrictions that require a denial of a waiver under Bylaw 6 even in spite of the fact the student may satisfy the requirements of an exception under Section 2. Specifically, a waiver of the period of ineligibility is not required if the change in school is motivated in whole or part by a desire to participate in athletics at the new school.

Bylaw 6 (Transfer rule) is a product of a series of votes of the schools who have voluntarily joined the KHSAA. As such, each school, including Adair County and Marshall County, have agreed to compliance.

Review of this matter must involve three steps. First, is the student subject to the provisions of Bylaw 6, Section 1? If in fact, the student is subject to the rule, do the circumstances of this case merit an exception to the period of ineligibility as enumerated in Section 2? Next, if the student merits an exception under Section 2, is that exception "voided" by evidence relative to Section 3 which prohibits the granting of eligibility where it is shown the transfer is for athletic reasons?

The KHSAA Due Process Procedure guides this analysis and states the granting of eligibility may only be made when the student-athlete or member school in question meets the standard stipulated in the rule or it may be granted in cases where strict application of the

applicable bylaw is unfair to the student-athlete because the circumstances creating the ineligibility are clearly beyond the control of all of the parties involved.

Necessarily, each case is reviewed individually and based on material submitted for that case. This review within Chapter 13B must, and has, focused solely on the record of the case including written materials properly submitted, the testimony at the hearing, the written recommendations received from the Hearing Officer, and any exceptions to the recommended order that are received by the Association in compliance with the procedure. No other material outside the record and in conflict with KRS Chapter 13B may be considered.

The transfer of Z█ H██████ is subject to Bylaw 6, because he participated in varsity athletics at Adair County High School after enrolling in grade nine, and then transferred to Marshall County High School.

*Bona Fide Change in Residence, Section 2*

The review of whether or not the student meets a Section 2 exception must focus solely on the transfer of the student from Adair County High School and the circumstances surrounding that transfer. Argument has been made that Z███ has a bonafide change in residence under Section 2 of Bylaw 6.

According to the exception based on a bona fide change in residence, the period of ineligibility may be waived if there has been a bona fide change in residence by the parents and student that precedes a student's change of schools. A bona fide change of residence means the uninterrupted moving of the permanent residence of the entire family unit of the student as composed when the student was eligible at the sending school from one school district or defined school attendance area into another school district or defined school attendance area prior to a change in enrollment of the student.

In this matter, the testimony was uncontested that Z███ and his father moved from Columbia, Kentucky to Benton, Kentucky on May 16, 2018. It further testified to that Z███ immediately enrolled at Marshall County High School that same day. As a result of the forgoing, there has been a bonafide change in residence in accordance with Section 2 of Bylaw 6.

*Was the Transfer for Athletic Reasons? – Section 3*

Section 3 of Bylaw 6 contains restrictions for a denial of a waiver even if the student meets an exception under Section 2 of the Bylaw. As recognized in the Exceptions filed on behalf of Z███ Section 3 compels the denial of a waiver if it is shown the transfer was motivated in whole or part by a desire to participate in athletics at the new school. Again, this analysis is restricted to record in this matter as set forth in KRS Chapter 13B.

A review of this record reveals a number of issues in this regard. Candidly, Mr. Harmon admitted in the hearing at this matter, that whoever the coach is at the school is a consideration when considering a school. Further, the May 25, 2018 article in the Paducah Sun also supports a conclusion this move was at least in part motivated by the desire to participate in athletics at the new school.

The subject matter article was focused on the possibility that Z███ might the enrolling at Marshall

County High School for the upcoming year. A possibility that ended up being true. Mr. Harmon shared his thoughts and opinions about coaching and the importance of coaching in the First Region and to Z⬛ in general. Mr. Harmon admitted he knew there was wide speculation and interest in where Z⬛ would go to school the next year. While Mr. Harmon stated he did not agree with everything in the article, he failed to contradict any specific statement attributed to him. At best, he indicated there was context missing in some instances.

"The problem I have with this is, I'm a little apprehensive about how…as a freshman…(Z⬛) led the state in scoring". Mr. Harmon admits he made this statement. Mr. Harmon also admitted to saying something similar to "I don't want him to be in a situation, where, you know, as a freshman…he was good. And after a summer (like this)… he's obviously going to be a much better player. I don't want him to come into a situation where it's more about the coach." There can be no doubt this is a father who is expressly stating the athletics at a potential school, specifically the coach would be a compelling factor in any decision.

There is also the vast history of changing schools for athletic reasons. Mr. Harmon demonstrated a pattern where Z⬛ has changed schools every year for the previous three years citing athletic reasons for the change each and every time. This necessarily makes this previous changes relevant to the matter at hand.

It is true there is evidence that Z⬛ and his father had concerns regarding his academic preparation for college athletics. While at Adair County, it was discovered that Z⬛ was actually enrolled in courses that would not be accepted by the NCAA. However, once discovered, that issue was quickly addressed. The family has also demonstrated interest in graduating in three years as well as a desire to continue tracking towards that goal.

However, when taking the evidence as a whole, the weight leans decisively towards a conclusion that the preponderance of evidence indicates that the transfer was motivated in **whole or part** by a desire to participate in athletics at the new school.

*Due Process Procedure*

Any consideration under the Due Process standard in this matter must fail. It is simply not possible to conclude that strict application of the applicable bylaw is unfair to the student-athlete because the circumstances creating the ineligibility are clearly beyond the control of all of the parties involved. The evidence shows the transfer was motivated in whole or part by a desire to participate in athletics at the new school. This was very much in the control of Z⬛ and his father.

As a result, the Hearing Officer's Recommended Order is REJECTED accordingly. Therefore, Z⬛ is INELIGIBLE to participate in interscholastic athletics at the varsity level at Marshall County High School – as it relates to Bylaw 6 for one year from the date of his last varsity participation, which would be March 6, 2019.

This Order does not address any other eligibility requirements of the Association that have not been the subject of this appeal. The student is expected to meet these requirements. This Order also does not address any local or school eligibility requirements that he or she may be subject to.

<u>Notice</u>

This is a final order, effective immediately, and may be appealed to the appropriate circuit court pursuant to KRS 13b.140(1) within thirty (30) days after this final order is mailed or delivered by personal service.

Sincerely,

Julian Tackett
Commissioner

xc:

Principal Patricia Greer, Marshall County High School
Principal Troy Young, Adair County High School
Dennis Foust, Attorney for Family
Mr. Todd Allen, Kentucky Department of Education
Mr. Chad Collins, KHSAA General Counsel

 **Kentucky High School Athletic Association**
2280 Executive Drive ° Lexington, KY 40505 ° www.khsaa.org ° (859)299-5472 (859)293-5999 (fax)

IN THE MATTER OF

TRANSFER ELIGIBILITY
BYLAW 6
SECTION 1
DOMESTIC STUDENTS

Z███ H██████, MARSHALL COUNTY HIGH SCHOOL

CASE #2050

This matter came on to be heard at 1:00 p.m., Friday, September 28, 2018, at the KHSAA office, 2280 Executive Drive, Lexington, Kentucky. Present were Brent Campbell, Athletic Director of Adair County High School; Troy Young, Principal at Adair County High School; Trent Lovett, Superintendent at Marshall County High School; Z███ H██████; Zalmico Harmon, Z███s father; Patricia Greer, Principal at Marshall County High School; Mike Johnson, Athletic Director at Marshall County High School; Darren Bilberry, Assistant Commissioner for the KHSAA; Chad Collins, attorney for the KHSAA; and Jeremy Ison, KHSAA Staff.

Having heard the testimony and having considered the entire record, which is incorporated herewith by reference into this recommendation, the Hearing Officer makes the following findings of fact and conclusions of law and tenders a recommended order.

### FINDINGS OF FACT

Z███ H██████, born on ███████ 2002, transferred from Adair County High School to Marshall County High School on June 1, 2018. Z███ H██████ last participated in varsity athletics at Adair County High School on March 5, 2018.

Zalmico Harmon, Z███s father, testified that there was a move by Z███ from Adair County High School to Marshall County High School on May 16, 2018 and that Z███ now lives at 120 Campus Lane, Apt. 200, Columbia, Kentucky. Exhibit 1 to the hearing is a rental lease for the Campus Lane property dated July 11, 2017. The lease was changed over (transferred) to Zalmico Harmon, Jr. on July 1, 2018.

The transfer form shows the date of enrollment at Marshall County High School as June 1, 2018. Mike Johnson, Athletic Director at Marshall County High School testified that he gave the wrong date.

The Campus Lane residence was initially occupied by Zalmico and his two sons. His older son is a trainer with clientele in the area. Zalmico and his older son later went back to Adair County.

Z███ is in the highest level of the Nike program and could go to any school. He has played in front of big time coaches.

Zalmico was involved in a MVA (he is a traveling nurse) and the MVA rendered him incapable of driving so he had to start flying. Adair County High School could not handle such travel. He needed to be near an airport which meant he needed to be in Louisville or Lexington.

PAGE 1

EXHIBIT
C

Zalmico claimed he had no issue with the athletic program at Adair County High School.  He did talk with the principal about a few big things.

When asked why he changed residence, Zalmico stated he met with the pupil personal guy at the Board of Education of Adair County about what the school offered.  They discussed what the school offered; that Z███ was playing with Nike and won a gold medal and would graduate.

Mr. Harmon candidly stated that Z███ had three years to graduation and his focus was on what Z███ needs for the colleges who have shown an interest.  What does Z███ need to finish high school in three years and be prepared for the schools by which he was being recruited.  He did not want Z███ taking any courses that were not NCAA accepted.  He spoke with the counselor at Adair County High School about classes there not being NCAA certified and the counselor is said to have replied "well he does not need to be here".
Mr. Harmon became aware within the first four weeks that with a 3.7 GPA, Z███ was not being challenged enough and noted Z███ had been in private schools most of his life.

Patricia Greer testified that to graduate early, Z███ would need to reach benchmarks.  Z███ needed a 154 but got a 150. She noted Z███ could take the test again and he would have been allowed access to a computer to review before taking the EOC.

Mr. Harmon stated Z███ was taking English I and English II to prepare him for EOC courses.  Z███ was being recruited by some really good schools.  To prepare Z███ for where he was going in the future, he was not being challenged academically at Adair County High School.

Mr. Harmon's car was in a motor vehicle accident.  He is a traveling nurse.  He had to start flying and the Adair County airport could not handle that so he needed to be close to Louisville or Lexington.

Z███'s play on the Nike tour has him playing in front of big time coaches and his father noted the flight time from Paducah to Chicago.

Z███ attended 5th and 6th grades at Mercy in Maryland and the 7th grade at Lighthouse Christian in Tennessee.  When asked why the changes, Zalmico stated the coach was gone from Mercy.  Z███ attended 8th grade at Bowling Green at the suggestion of an AAU individual.  Why not Bowling Green for the 9th grade?  Because they won State during Z███'s 8th grade year after which the coach left.

The record contains a newspaper article in the Paducah Sun written by Edward Marlowe speculating on "where in the word is Z███ H███ going to play in 2018-19".  That article states that Z███ and his father have made some trips to the area and "do have some interest departing Adair County for new high school basketball opportunities".

Mr. Harmon acknowledged that Louisville area schools were considered, specifically Trinity and Ballard and that they did not look at academics.

Z███ and Zalmico Harmon went to the office of Mike Johnson, Athletic Director at Marshall County High School on May 16, 2018 to inquire about the procedure for enrolling Zion at Marshall County High School.  Mr. Johnson walked Mr. Harmon to the registrar's office.  Z███ and his father met with the principal on April 2, 2018.

PAGE 2

**CONCLUSIONS OF LAW**

The KHSAA Handbook includes the KHSAA Bylaws, specifically Bylaw 6 (Transfer Rule). Bylaw 6, Section 1(a) requires that:

a) Any student that has been enrolled in grades nine (9) through twelve (12) and has participated in any varsity contest in any sport at any school while maintaining permanent residence in the United States or a United States territory following enrollment in grade nine (9) and who then transfers schools shall be ineligible for interscholastic athletics at any level in any sport for one year from the date of last participation in varsity interscholastic athletics.

## Case BL-6-2 Why is there a transfer rule?

*Nearly every state has a transfer rule to protect the integrity of the interscholastic program. These rules are necessary for several reasons, including but not limited to, the following principles:*

*(1)    these rules prevent and deter transfers due to recruiting or athletic reasons;*

*(2)    these rules protect the opportunities of bona fide resident student;*

*(3)    these rules provide a fundamentally fair and equitable framework for athletic competition in an academic setting;*

*(4)    these rules provide uniform standards for all schools to follow;*

*(5)    these rules support the educational philosophy that athletics is a privilege which should not assume a dominant position in a school's program;*

*(6)    these rules keep the focus of educators and students on the fact that students attend schools to receive an education first, and participate in athletics second;*

*(7)    these rules maintain the fundamental principle that a high school student should live at home with parents or custodian in the event of parental death or incapacitation, and attend school in the school district in which they reside;*

*(8)    these rules reinforce the view that a family is a strong and viable unit and as such is the best place for students to live while attending high school;*

*(9)    these rules serve as a deterrent to students running away from, or avoiding discipline that has been imposed; and*

*(10)    these rules prevent manipulation of a residence change or other exception solely or primarily for the purpose of interscholastic athletics participation and serve to ensure the integrity of the rules adherence process.*

The KHSAA rules regarding transfer of a student from one school to another provides in Bylaw 6 – the Transfer Rule – for a number of exceptions to the rule set out in Section I of the bylaw.

Section 3 of Bylaw 6 sets out specific restrictions for denial of a waiver for those satisfying a discretionary waiver provision in Section 2. One of those restrictions is "if the change in schools is motivated in whole or part by a desire to participate in athletics at the new school".

Even if Z███'s transfer merited a waiver under Bylaw 6, bona fide "change of residence", and the hearing officer does not so find, it is clear that Section 3d of Bylaw 6 would prohibit the hearing officer from making such a recommendation. It is crystal clear from the evidence that the transfer was all about participation in athletics at the receiving school. The motivation was to position Z███ for participation in college basketball at a school that had been recruiting him.

PAGE 3

## RECOMMENDED ORDER

It is recommended that a waiver of Bylaw 6 not be granted. It is recommended that the appeal be denied; that the decision of the Ruling Officer be affirmed; and that Z█ Harmon remain ineligible to participate in interscholastic athletics until March 5, 2019, with respect to the issues of the Bylaw under consideration.

Pursuant to KRS 13B.110(4), each party shall have fifteen (15) days from the date this Recommended Order is mailed within which to file exceptions to the Recommended Order with the Kentucky High School Athletic Association.

You are reminded that there is no change in the eligibility status of the student until the Commissioner issues the Final Order after the period of time for exceptions to be filed has lapsed. The Final Order of the Commissioner of the Kentucky High School Athletic Association may be appealed pursuant to KRS 13B.140(1), which states:

> All final orders of an agency shall be subject to judicial review in accordance with the provisions of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) days after the final order of the agency is mailed or delivered by personal service. If venue for appeal is not stated in the enabling statutes, a party may appeal to Franklin Circuit Court or the Circuit Court of the county in which the appealing party resides or operates a place of business. Copies of the petition shall be served by the petitioner upon the agency and all parties of record. The petition shall include the names and addresses of all parties to the proceeding and the agency involved, and a statement of the grounds on which the review is requested. The petition shall be accompanied by a copy of the final order.

Pursuant to KRS 23A.010(4), "Such review [by the Circuit Court] shall not constitute an appeal but an original action." Some courts have interpreted this language to mean that a summons must be served upon filing an appeal in Circuit Court.

SO RECOMMENDED this 16th day of October, 2018.

*Edmund P. Karem*

_____

*EDMUND P. KAREM, HEARING OFFICER*

In the matter of Z▮▮ H▮▮▮▮, Marshall County High School – Case #2050

## NOTICE

A copy of the Hearing Officer's Recommended Order shall be sent to each party in the hearing and each party shall have fifteen (15) days from the date the Recommended Order is mailed within which to file exceptions with the Commissioner.

You will be notified in writing of the Commissioner's final action following the conclusion of the period to file exceptions.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this original ORDER was mailed this 16th day of October, 2018, by certified mail to:

Zalmico Harmon
1635 B Walnut Street
Benton, KY 42025

Principal Patricia Greer
Marshall County HS
416 High School Road
Benton, KY 42025

Principal Troy Young
Adair County HS
526 Indian Drive
Columbia, KY 42728

Mr. Chad Collins
KHSAA General Counsel
2280 Executive Drive
Lexington, KY 40505

Mr. Todd Allen
KY Department of Education
Capital Plaza Tower, 500 Mero
Frankfort, KY 40601

Jeremy Ison Administrative Support Specialist

 **Kentucky High School Athletic Association**
2280 Executive Drive ° Lexington, KY 40505 ° www.khsaa.org ° (859)299-5472 (859)293-5999 (fax)

November 15, 2018

Zalmico Harmon
1635 B Walnut Street
Benton, KY 42025

Dear Mr. Harmon:

In accordance with KRS Chapter 13B, the Hearing Officer's Recommended Order for Z▆ Harmon — Case #2050, along with the filed exceptions have been considered by the Commissioner.

After considering the record, I hereby set aside the Hearing Officer's Recommended Order and issue the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Z▆ H▆ was born on ▆▆ 2002. According to the testimony of the Harmon family, Z▆ formally began the enrollment process at Marshall County High School on May 16, 2018. According to Adair County, Z▆ finished the school year at Adair County and withdrew on May 25, 2018. Z▆ last participated in varsity athletics at Adair County High School on March 5, 2018.

2. The Transfer Form in this matter indicates the date of enrollment for Z▆ was June 1, 2016. However, Marshall County Athletic Director Mike Johnson testified that he made an error and put the wrong date. He further testified the correct date was May 16, 2018. He further submitted a letter marked Exhibit #3 to the hearing in support of that statement.

3. Z▆'s father, Zalmico Harmon Sr. testified that he and Z▆ moved to 1635 B., Walnut Street located in Benton, Kentucky (Marshall County High School District) on May 16, 2018. They have continued to live there since this time. Mr. Harmon further testified he and Z▆ moved from May 120 Campus Lane, Apt. 200 located in Columbia, Kentucky (Adair County High School District). The lease for the residence at 120 Campus Lane was transferred to Mr. Harmon's oldest son, Zalmico Harmon Jr. This lease is marked as Exhibit #1 to the hearing.

4. When asked why the change in schools, Mr. Harmon testified that Z▆ required an academic situation that would allow him to graduate from high school in three years as opposed to the traditional four-year program. When Z▆ initially enrolled at Adair County, he also enrolled in certain on-line courses that were supposed to help facilitate a three-year graduation.

5. Mr. Harmon testified that he had no issue with the athletic program at Adair County. However, he did indicate there were issues he brought to the attention of the school principal. After the first few weeks at Adair County, Mr. Harmon testified he learned the on-line courses in which Z▆ was enrolled, would not be accepted by the NCAA. As a result, Z▆'s class schedule was changed while still working towards graduation in three years.



**EXHIBIT**

D

**6** At the end of the year, Z█ took the End of Course ("EOC") exam in English II and while he received an "A" in the class, he did not get the required score to enable graduation in three years. Per state requirements, a student must get a 154 on the English II EOC. Z█ scored a 150. As a result, Z█ would need to re-take the exam to get the requisite score. Z█ finished the year with a 3.7 GPA.

**7** When asked how the family selected Marshall County High School, Mr. Harmon testified that proximity to an airport was important to any move. Mr. Harmon is a travelling nurse and works every other weekend in the D.C.-Maryland area. Until recently, Mr. Harmon testified he preferred driving to the D.C. – Maryland area for this employment. However, a recent motor vehicle accident caused him to decide to fly as he felt it was a safer. As a result, Mr. Harmon testified that they considered the Lexington, Louisville, and Paducah areas as they were near an airport.

**8** Mr. Harmon testified that he was familiar with Marshall County High School because Z█ had played there in the past. Mr. Harmon also testified he contacted the school and met with Principal Patricia Greer on April 2, 2018. At that time, Mr. Harmon stated they inquired and learned about the academic programs at the school and the desire to graduate in three years (2020) continued to be a focus of attention.

**9** Mr. Harmon testified that it was important to have his son challenged academically. He mentioned that Z█ had been in private schools most of his life. Z█ attended the 6th grade at Mercy in Maryland. For the 7th grade, Mr. Harmon testified Z█ transferred to Lighthouse Christian in Tennessee so he would be able to play high school basketball as a 7th grader. For the 8th grade, Mr. Harmon testified Z█ transferred to Bowling Green Middle School because the coach at Lighthouse Christian was no longer there. Following the 8th grade, Z█ transferred to Adair County High School. When asked why Z█ left Bowling Green, Mr. Harmon stated that it was because the coach at Bowling Green High School (where he was playing) had left that position with the school.

**10** The record contains a newspaper article titled "Harmon Headed to Marshall County? Not Just yet, says dad". The article was written by Edward Marlowe of the Paducah Sun. According to the testimony of Mr. Harmon, the article was published on May 25, 2018. During the hearing in this matter, Mr. Harmon acknowledged doing an interview with Mr. Marlowe before the article was published.

**11** Mr. Harmon testified that at the time of the subject matter interview for the May 25th article that he had not yet made a decision about enrollment for Z█. He further stated he did not agree with everything Mr. Marlowe wrote, but Mr. Harmon did acknowledge making several statements attributed to him as a part of the interview.

**12** Included in the May 25th article, Mr. Harmon was quoted as saying: "The problem I have with this is, I'm a little apprehensive about how...as a freshman...(Z█) led the state in scoring". Mr. Harmon took no issue with the accuracy of this statement.

**13** The article continued quoting Mr. Harmon as saying: "Played for USA Basketball, Plays on the EYBL circuit. I understand the competitive coaches, but the players (Z█) played against with USA Basketball and EYBL? It's a whole different level. And he's over (1,500) high school points already." Mr. Harmon agreed he made this statement.

14 | The May 25th article continues by quoting Mr. Harmon as stating: "I don't want him to be in a situation, where, you know, as a freshman...he was good. And after a summer (like this)... he's obviously going to be a much better player. I don't want him to come into a situation where it's more about the coach." When asked to confirm this statement, Mr. Harmon indicated that he had to have said something similar to that.

15 | Also a part of the May 25th article was a list of schools Mr. Harmon indicated that were under consideration for Z██ including Marshall County, McCracken County, Scott County, Bowling Green as well as a prep route. In the hearing, Mr. Harmon confirmed these schools as well as Trinity, Ballard, IMG, Huntington Prep and others. However, Mr. Harmon also stated that he had not visited any of these schools. Marshall County High School was the only school that the academic curriculum was reviewed or visited.

16 | During the hearing in this matter, Mr. Harmon acknowledged whoever the coach is at the school is a consideration when considering a school. This was in direct response to questions about the May 25th article.

## CONCLUSIONS OF LAW

17 | The body of law that the Commissioner is required to consider in reaching conclusions of law is contained in the Kentucky High School Athletic Association Handbook that includes the Bylaws of the Kentucky High School Athletic Association and the Due Process Procedures. The issues in this matter specifically include:

**Bylaw 6. Transfer Rule**

Sec. 1) DOMESTIC STUDENT TRANSFER

18 |
a) Any student who has been enrolled in grades nine (9) through twelve (12) and has participated in any varsity contest in any sport at any school while maintaining permanent residence in the United States or a United States territory following enrollment in grade nine (9) and who then transfers schools shall be ineligible for interscholastic athletics at the varsity (first team) level in any sport for one year from the date of last participation in varsity interscholastic athletics.
b) Any student who has been enrolled in grades nine (9) through twelve (12) and has participated in any varsity contest in any sport at any school following enrollment in grade nine (9) who has been previously granted eligibility under the provisions of Bylaw 7 or Bylaw 8 and who then transfers schools shall be ineligible for interscholastic athletics at the varsity (first team) level in any sport for one year from the date of last participation in varsity interscholastic athletics.
c) The Ruling Officer and Commissioner have discretion (but are not required) to waive the period of ineligibility set forth above if one or more of the following exceptions in Sec. 2 has been met.
d) A student awaiting a ruling regarding eligibility under the provisions of this bylaw, shall not be eligible to compete, including practice, at any level during the periods defined by Bylaw 23.

19 | Case Situation BL-6-2 actually explains why the member schools of the Association (as well as virtually every other state association) have chosen to adopt the transfer rule. It provides:

Page 3 of 7

**Case BL-6-2 Why is there a transfer rule?**

Nearly every state has a transfer rule to protect the integrity of the interscholastic program. These rules are necessary for several reasons, including but not limited to, the following principles:

(1)  these rules prevent and deter transfers due to recruiting or athletic reasons;
(2)  these rules protect the opportunities of bona fide resident students;
(3)  these rules provide a fundamentally fair and equitable framework for athletic competition in an academic setting;
(4)  these rules provide uniform standards for all schools to follow;
(5)  *these rules support the educational philosophy that athletics is a privilege which should not assume a dominant position in a school's program;*
(6)  these rules keep the focus of educators and students on the fact that students attend schools to receive an education first, and participate in athletics second;
(7)  these rules maintain the fundamental principle that a high school student should live at home with parents or a custodian in the event of parental death or incapacitation, and attend school in the school district in which they reside;
(8)  these rules reinforce the view that a family is a strong and viable unit and as such is the best place for students to live while attending high school;
(9)  these rules serve as a deterrent to students running away from, or avoiding discipline that has been imposed; and
(10) *these rules prevent manipulation of a residence change or other exception solely or primarily for the purpose of interscholastic athletics participation and serve to ensure the integrity of the rules adherence process.*





Section 2 of Bylaw 6 contains a list of exceptions that allow for a waiver of the one-year period of ineligibility required by Section 1. The exceptions include: a) Reassignment by board of education; b) Transfer from non-member school; c) Military assignment; d) Bona fide change in residence; e) Divorce; f) Change in sole custody; g) Change in joint custody; h) Death; i) Boarding schools; and j) Cessation of school program.



Section 3 of Bylaw 6 contains restrictions that require a denial of a waiver under Bylaw 6 even in spite of the fact the student may satisfy the requirements of an exception under Section 2. Specifically, a waiver of the period of ineligibility is not required if the change in school is motivated in whole or part by a desire to participate in athletics at the new school.

Bylaw 6 (Transfer rule) is a product of a series of votes of the schools who have voluntarily joined the KHSAA. As such, each school, including Adair County and Marshall County, have agreed to compliance.



Review of this matter must involve three steps. First, is the student subject to the provisions of Bylaw 6, Section 1? If in fact, the student is subject to the rule, do the circumstances of this case merit an exception to the period of ineligibility as enumerated in Section 2? Next, if the student merits an exception under Section 2, is that exception "voided" by evidence relative to Section 3 which prohibits the granting of eligibility where it is shown the transfer is for athletic reasons?



The KHSAA Due Process Procedure guides this analysis and states the granting of eligibility may only be made when the student-athlete or member school in question meets the standard stipulated in the rule or it may be granted in cases where strict application of the

 applicable bylaw is unfair to the student-athlete because the circumstances creating the ineligibility are clearly beyond the control of all of the parties involved.

 Necessarily, each case is reviewed individually and based on material submitted for that case. This review within Chapter 13B must, and has, focused solely on the record of the case including written materials properly submitted, the testimony at the hearing, the written recommendations received from the Hearing Officer, and any exceptions to the recommended order that are received by the Association in compliance with the procedure. No other material outside the record and in conflict with KRS Chapter 13B may be considered.

 The transfer of Z█ Harmon is subject to Bylaw 6, because he participated in varsity athletics at Adair County High School after enrolling in grade nine, and then transferred to Marshall County High School.

*Bona Fide Change in Residence, Section 2*

 The review of whether or not the student meets a Section 2 exception must focus solely on the transfer of the student from Adair County High School and the circumstances surrounding that transfer. Argument has been made that Z█ has a bonafide change in residence under Section 2 of Bylaw 6.

 According to the exception based on a bona fide change in residence, the period of ineligibility may be waived if there has been a bona fide change in residence by the parents and student that precedes a student's change of schools. A bona fide change of residence means the uninterrupted moving of the permanent residence of the entire family unit of the student as composed when the student was eligible at the sending school from one school district or defined school attendance area into another school district or defined school attendance area prior to a change in enrollment of the student.

 In this matter, the testimony was uncontested that Z█ and his father moved from Columbia, Kentucky to Benton, Kentucky on May 16, 2018. It further testified to that Z█ immediately enrolled at Marshall County High School that same day. As a result of the forgoing, there has been a bonafide change in residence in accordance with Section 2 of Bylaw 6.

*Was the Transfer for Athletic Reasons? – Section 3*

 Section 3 of Bylaw 6 contains restrictions for a denial of a waiver even if the student meets an exception under Section 2 of the Bylaw. As recognized in the Exceptions filed on behalf of Z█ Section 3 compels the denial of a waiver if it is shown the transfer was motivated **in whole or part** by a desire to participate in athletics at the new school. Again, this analysis is restricted to record in this matter as set forth in KRS Chapter 13B.

 A review of this record reveals a number of issues in this regard. Candidly, Mr. Harmon admitted in the hearing at this matter, that whoever the coach is at the school is a consideration when considering a school. Further, the May 25, 2018 article in the Paducah Sun also supports a conclusion this move was at least in part motivated by the desire to participate in athletics at the new school.

 The subject matter article was focused on the possibility that Z█ might the enrolling at Marshall
Page 5 of 7



County High School for the upcoming year. A possibility that ended up being true. Mr. Harmon shared his thoughts and opinions about coaching and the importance of coaching in the First Region and to Z███ in general. Mr. Harmon admitted he knew there was wide speculation and interest in where Z███ would be going to school the next year. While Mr. Harmon stated he did not agree with everything in the article, he failed to contradict any specific statement attributed to him. At best, he indicated there was context missing in some instances.



"The problem I have with this is, I'm a little apprehensive about how...as a freshman...(Z███) led the state in scoring". Mr. Harmon admits he made this statement. Mr. Harmon also admitted to saying something similar to "I don't want him to be in a situation, where, you know, as a freshman...he was good. And after a summer (like this)... he's obviously going to be a much better player. I don't want him to come into a situation where it's more about the coach." There can be no doubt this is a father who is expressly stating the athletics at a potential school, specifically the coach would be a compelling factor in any decision.



There is also the vast history of changing schools for athletic reasons. Mr. Harmon demonstrated a pattern where Z███ has changed schools every year for the previous three years citing athletic reasons for the change each and every time. This necessarily makes this previous changes relevant to the matter at hand.



It is true there is evidence that Z███ and his father had concerns regarding his academic preparation for college athletics. While at Adair County, it was discovered that Z███ was actually enrolled in courses that would not be accepted by the NCAA. However, once discovered, that issue was quickly addressed. The family has also demonstrated interest in graduating in three years as well as a desire to continue tracking towards that goal.

37

However, when taking the evidence as a whole, the weight leans decisively towards a conclusion that the preponderance of evidence indicates that the transfer was motivated in **whole or part** by a desire to participate in athletics at the new school.

*Due Process Procedure*



Any consideration under the Due Process standard in this matter must fall. It is simply not possible to conclude that strict application of the applicable bylaw is unfair to the student-athlete because the circumstances creating the ineligibility are clearly beyond the control of all of the parties involved. The evidence shows the transfer was motivated in whole or part by a desire to participate in athletics at the new school. This was very much in the control of Z███ and his father.



As a result, the Hearing Officer's Recommended Order is REJECTED accordingly. Therefore, Z███ is INELIGIBLE to participate in interscholastic athletics at the varsity level at Marshall County High School -- as it relates to Bylaw 6 for one year from the date of his last varsity participation, which would be March 6, 2019.

40

This Order does not address any other eligibility requirements of the Association that have not been the subject of this appeal. The student is expected to meet these requirements. This Order also does not address any local or school eligibility requirements that he or she may be subject to.

<u>Notice</u>

41

This is a final order, effective immediately, and may be appealed to the appropriate circuit court pursuant to KRS 13b.140(1) within thirty (30) days after this final order is mailed or delivered by personal service.

Sincerely,

Julian Tackett
Commissioner


xc:

Principal Patricia Greer, Marshall County High School
Principal Troy Young, Adair County High School
Dennis Foust, Attorney for Family
Mr. Todd Allen, Kentucky Department of Education
Mr. Chad Collins, KHSAA General Counsel

# Harmon heading to Marshall County? Not just yet, says dad

**BY EDWARD MARLOWE**

EXHIBIT

E

### COMMONWEALTH OF KENTUCKY
### MARSHALL CIRCUIT COURT
### CIVIL ACTION NUMBER: 18-CI-000436

Z███ H█████████, a minor                                    **PLAINTIFF**
**by and through his Parent and**
**Next Friend, ZALMICO HARMON**

**v.**

### MOTION FOR TEMPORARY INJUNCTION AND PETITION FOR STAY
### OF ENFORCEMENT OF FINAL ORDER OF THE DEFENDANTS

**KENTUCKY HIGH SCHOOL ATHLETIC ASSOCIATION**          **DEFENDANT**

Comes now the Plaintiff, Z██ H█████, a minor, by and through his Parent and Next

Friend, Zalmico Harmon, each by and through counsel, and moves this court for a Temporary

Injunction and Petition for Stay of Enforcement of the Final Order of the Defendant.

### FACTUAL SUMMARY

On November 15, 2018, Defendant, KHSAA Commissioner Julian Tackett, issued

Findings of Fact and Conclusions of Law following a KRS 13B Hearing, declaring Z██ H█████

to be "INELIGIBLE to participate in interscholastic athletics at the varsity level at Marshall

County High School - as it relates to Bylaw 6 for one year from the date of his last varsity

participation, which would be March 6, 2019."

Plaintiff filed this action on December 5, 2018, requesting that this Court reverse the

Final Order of the Defendant, KHSAA, and remand the case for the Defendant to enter a Final

Order declaring the Plaintiff's son, Z██ H█████, to be eligible to participate in high school

athletics upon the bases that the Final Order, was in violation of constitutional provisions;

without support of substantial evidence on the whole record; was arbitrary, capricious, or

characterized by abuse of discretion; and/or deficient as otherwise provided by law.

1

## MOTION FOR TEMPORARY INJUNCTION

Specifically, Plaintiff moves this court for a Temporary Injunction providing as follows:

Plaintiff requests that this Court reverse the Final Order of the Defendant, KHSAA, and remand the case for the Defendant to enter a Final Order declaring the Plaintiff's son, Z▆ H▆▆▆, to be eligible to participate in high school athletics upon the bases that said Final Order was in violation of constitutional provisions; without support of substantial evidence on the whole record; was arbitrary, capricious, or characterized by abuse of discretion; and/or deficient as otherwise provided by law, all in violation of KRS 13B.150(2).

Further, the Plaintiff respectfully requests a stay of the "final order pending the outcome of the review" to be ordered by the Marshall Circuit Court, immediately allowing the Plaintiff, Z▆ H▆▆▆, a minor, to participate in high school athletics, in accordance with KRS 13B.140(4)(c). As grounds for said Motion, Plaintiff states as follows:

1.   CR 65.04(1) provides as follows:

"A temporary injunction may be granted during the pendency of an action on motion if it is clearly shown by verified complaint, affidavit, or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action, or the acts of the adverse party will tend to render such final judgment ineffectual."

"In order to demonstrate a right to a temporary injunction, the movant must first allege possible abrogation of a concrete personal right....It is also necessary that a clear showing be made that the rights of the movant will be immediately impaired.... The party seeking the injunction must demonstrate an urgent necessity for the relief requested." Com. Ex Rel. Cowan v. Wilkinson, 828 S.W.2d 610, 612 (Ky. 1992).

2.   The Kentucky Supreme Court has recognized that cases of this nature are appropriate for equitable relief, as follows: "...[R]elief from our judicial system should be

2

available if voluntary athletic associations act arbitrarily and capriciously toward student-athletes." National Collegiate Athletic Ass'n v. Lasege, 53 S.W.3d 77, 83 and 86 (Ky. 2001). See also Indiana High School Athletic Ass'n, Inc. v. Wideman, 688 N.E.2d 413 (Ind.Ct.App. 1997)(copy attached).

3.      In the case at bar, the ability of a 16 year old child to participate in high school athletics has been arbitrarily, capriciously and erroneously taken from him by the Defendant, KHSAA. Every child who walks into a Kentucky high school is afforded the right to participate in extra-curricular school activities, which are an integral component of the matriculation process. Certainly, these types of activities fall within the spectrum of inalienable rights described by the Founders of this country as "life, liberty and the pursuit of happiness" in the Declaration of Independence.

4.      The rights of Plaintiff's son, Z█ H█████, have been immediately impaired by the Final Order of the Defendant, KHSAA, as of November 15, 2018. Once each day of a child's life concludes, there are no opportunities for a "do over," a make-up game, and he cannot hit the "refresh" button. To date, the Plaintiff's minor child has already missed several basketball games, many practices and even more opportunities to interact with his teammates upon the field of endeavor. Those days are gone and cannot be given back to him. Absent immediate relief, this chapter of his young life will be concluded before he has the opportunity to write same.

5.      There is an urgent necessity for the relief sought, as most reported cases involving the Defendant, KHSAA, are not addressed by Kentucky appellate courts upon the basis that the issues are usually moot within a matter of months. See Kentucky High School Athletic Ass'n v. Davis, 77 S.W.3d 596 (Ky. App. 2002), and Kentucky High School Athletic Ass'n v. Runyon,

920 S.W.2d 525 (Ky. 1996).

6.      The KHSAA issued its Final Order, determining that the Plaintiff's child was ineligible to participate in high school athletics, claiming that Plaintiff's decision to attend Marshall County High School was motivated "in part by a desire to participate in athletics at the new school." (Final Order, Exhibit A to Complaint).  In making this determination, the KHSAA arbitrarily and capriciously applied its rules toward the Plaintiff, and issued its Final Order without the support of substantial evidence.  In point of fact, the KHSAA Final Order is grossly contrary to the evidence offered at the Hearing.

7.      In support of said Motion, the Plaintiff tenders the Verified Complaint and Exhibits filed in this action, in particular, the Final Order of the Defendant, KHSAA, dated November 15, 2018 (Final Order, Exhibit A to Complaint).

8.      In support of said Motion, the Plaintiff tenders a copy of the video recording of the September 28, 2018, hearing before the Kentucky High School Athletic Association hearing officer, with testimony taken under oath pursuant to KRS 13B.080 and KRS 13B.090 (see Hearing Recording, Exhibit B, to Complaint), received by Plaintiff from the KHSAA on November 21, 2018.  This is a type of "other evidence" permitted to be utilized for the granting of a temporary injunction under CR 65.04; particularly since a Court considering a review of a final order following KRS 13B Hearing is strictly confined to the record establishing the Final Order in question.  KRS 13B.150(1).

8.      In support of such Motion, Plaintiff has tendered a proposed temporary injunction bond as required by CR 65.05.

9.      A proposed temporary injunction will be tendered at the hearing on this Motion.

4

10.     A Memorandum of Law in Support of Motion for Temporary Injunction is filed

contemporaneously with this Motion.

**WHEREFORE**, Plaintiff requests as follows:

1.     For a temporary injunction to issue forthwith, pending a final outcome on the

merits of this action, following a hearing on same; and for

2.     Any other relief to which the Plaintiff may appear entitled.

Respectfully submitted,

William C. Adams, III
Attorney at Law
291 Main Street; P.O. Box 1419
Murray, Kentucky 42071
Telephone: (270) 753-1292
Telefax: (270) 753-5648
Attorney for Plaintiff

## NOTICE

You are hereby notified that the foregoing Motion will be submitted to the Marshall

Circuit Court, 80 Judicial Drive, Benton, Kentucky 42025, for its consideration at the

hour of 2:00 P.M., Central Time on the 14th day of December, 2018, or as soon thereafter as

meets the convenience of the court.

William C. Adams, III

5

## CERTIFICATE OF SERVICE

I, William C. Adams, III, do hereby certify that a true and accurate copy of the foregoing

was sent by ordinary U.S. Mail and as specifically set forth below to all of the following on this

the 10th day of December, 2018:

Hon. Andrew Beshear
Kentucky Attorney General
118 Capitol Building; 700 Capital Avenue
Frankfort, KY 40601

Chad Collins, Esq.,
Kentucky High School Athletic Association
2280 Executive Drive
Lexington, Kentucky 40505
and via email

with the Original filed with the Marshall Circuit Court.

_____
William C. Adams, III

6

Indiana High School Athletic Ass'n, Inc. v. Wideman, 688 N.E.2d 413 (1997)
122 Ed. Law Rep. 1268

688 N.E.2d 413
Court of Appeals of Indiana.

INDIANA HIGH SCHOOL ATHLETIC
ASSOCIATION, INC., and Bob Gardner,
in his Capacity as Commissioner of
the Indiana High School Athletic
Association, Inc., Appellants–Defendants,
Paul Crousore, in his Capacity as Principal of
Warsaw Community High School, Defendant,
v.
Samantha WIDEMAN, By and Through her
next friend and parents, James WIDEMAN
and Penny Wideman, Appellee–Plaintiff.

No. 43A03–9701–CV–8.
|
Dec. 15, 1997.

**Synopsis**
High school student brought action seeking to enjoin
Indiana High School Athletic Association (IHSAA) from
enforcing decision finding her ineligible to play high
school sports. The Kosciusko Superior Court, Robert
Burner, J., granted preliminary injunction. IHSAA sought
interlocutory appeal. The Court of Appeals, Hoffman,
J., held that: (1) substantial evidence supported court's
finding that decision by IHSAA that student's move to
another school district was athletically motivated such
that she was ineligible to participate in school sports for
one year was arbitrary and capricious, and (2) student
showed that decision would cause her irreparable harm
and that her legal remedies were inadequate.

Affirmed.

West Headnotes (10)

[1]    **Appeal and Error**
        ⚖ Preliminary injunction;temporary
        restraining order
        **Injunction**
        ⚖ Discretionary Nature of Remedy
        Grant or denial of preliminary injunction rests
        within trial court's equitable discretion, and

appellate court will reverse only if trial court's
action constitutes clear abuse of discretion.

Cases that cite this headnote

[2]    **Injunction**
        ⚖ Grounds in general;multiple factors
        Generally, court considers four factors in
        determining propriety of injunctive relief:
        (1) whether plaintiff's remedies at law
        are inadequate, thus, causing irreparable
        harm pending resolution of action, (2)
        whether plaintiff can demonstrate reasonable
        likelihood of success on merits; (3) whether
        threatened injury to plaintiff outweighs
        threatened harm grant of relief would
        occasion upon defendant; and (4) whether
        public interest would be disserved by granting
        relief. Trial Procedure Rule 52(A)(1).

        1 Cases that cite this headnote

[3]    **Appeal and Error**
        ⚖ Preliminary injunction;temporary
        restraining order
        Review of grant or denial of preliminary
        injunction is limited to whether trial court
        abused its discretion.

        Cases that cite this headnote

[4]    **Appeal and Error**
        ⚖ Preliminary injunction;temporary
        restraining order
        On review of grant or denial of
        preliminary injunction, appellate court will
        neither reweigh evidence nor resolve factual
        controversies, but looks to special findings of
        fact to see whether they validly support court's
        decision.

        Cases that cite this headnote

[5]    **Appeal and Error**
        ⚖ Preliminary injunction;temporary
        restraining order
        On review of grant or denial of preliminary
        injunction, court's findings will not be set

aside unless they are "clearly erroneous," meaning both insufficient to disclose valid basis for legal result reached in judgment and unsupported by evidence of probative value.

Cases that cite this headnote

[6]    **Education**
    &#9902;  Judicial intervention
When reviewing Indiana High School Athletic Association (IHSAA) eligibility decisions, trial court is limited to reviewing record of proceedings conducted before IHSAA with respect to factual determinations made by IHSAA.

1 Cases that cite this headnote

[7]    **Education**
    &#9902;  Judicial intervention
When reviewing Indiana High School Athletic Association (IHSAA), court may not reweigh evidence or judge witness' credibility but simply analyzes the record as a whole, including both record of proceedings before IHSAA together with any properly admitted, relevant new evidence presented to trial court, to determine whether IHSAA's findings were supported by substantial evidence.

1 Cases that cite this headnote

[8]    **Education**
    &#9902;  Judicial intervention
Decision by Indiana High School Athletic Association (IHSAA) must be overturned when it is determined that IHSAA acted arbitrarily and capriciously in making decision.

1 Cases that cite this headnote

[9]    **Injunction**
    &#9902;  Athletics
Substantial evidence supported court's finding that decision by Indiana High School Athletic Association (IHSAA) that student's move to another school district was athletically

motivated such that she was ineligible to participate in school sports for one year was arbitrary and capricious, and, thus, student had shown reasonable likelihood for success on merits for purposes of preliminary injunction barring IHSAA from rendering student ineligible; family's change of residence was bona fide as defined by IHSAA rules, and family moved for legitimate family, health and employment concerns such as to be closer to elderly family members and to avoid parents' commute to work.

Cases that cite this headnote

[10]    **Injunction**
    &#9902;  Athletics
High school student showed that decision by Indiana High School Athletic Association (IHSAA) rendering her unable to participate in high school sports for one year would cause her irreparable harm and that her legal remedies were inadequate, where student was junior in high school and ruling would substantially impair her high school athletic career.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*415** Robert M. Baker, III, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, for Appellants-Defendants.

Steven R. Hearn, Millard P. Plumlee, Lemon, Armey, Hearn & Leininger, Warsaw, for Appellee-Plaintiff Samantha Wideman, by and through her next friend and parents, James Wideman And Penny Wideman.

**OPINION**

HOFFMAN, Judge.

Appellants-defendants Indiana High School Athletic Association, Inc., and Bob Gardner, in his capacity as Commissioner of the Indiana High School Athletic

Association, Inc. (collectively referred to as IHSAA) bring this interlocutory appeal from the trial court's grant of appellee-defendant Samantha Wideman's (Samantha) preliminary injunction enjoining the IHSAA from rendering Samantha ineligible to compete in high school athletics for a period of 365 days.

Until August 9, 1996, Samantha and her parents, James and Penny Wideman, lived in Mentone, Indiana, which is approximately 17 miles southwest of Warsaw, Indiana. Samantha was enrolled at Tippecanoe Valley High School (Tippy Valley) where she competed on the girl's varsity volleyball and basketball teams during the 9th and 10th grades. According to newspapers, Samantha was expected to be "the cornerstone" of Tippy Valley's basketball program during her junior and senior years.

James and Penny work in Warsaw and commuted back and forth to work. Penny's father, a stroke victim who suffers from blindness, hearing loss and heart disease, lives in Warsaw. In the fall of 1995, it was discovered that Penny's mother had developed a brain tumor. During her mother's illness, Penny was the primary care giver for both her parents. After Penny's mother passed away in May of 1996, Penny became solely responsible for the care of her father. James also has a widowed father who lives in Warsaw. Further, James himself has multiple sclerosis, and in February of 1996, his condition worsened due in part to his workload and a loss of sleep.

In June of 1996, the Widemans listed their home in Mentone for sale and in August of 1996 they sold it at full list price and moved to Warsaw. The Widemans purchased land in Warsaw and began constructing a new home in the fall of 1996. On August 9, 1996, Samantha enrolled at Warsaw Community High School (WCHS).

At WCHS Samantha sought to play varsity sports. Based upon an investigation by the IHSAA Assistant Commissioner, it was determined that Samantha's transfer from Tippy Valley to WCHS was "primarily for athletic reasons" and she was declared ineligible for a period of 365 days based on IHSAA Rule 19–4. Rule 19–4 provides that a student athlete who transfers schools for "primarily athletic reasons" may be ineligible to participate in interschool athletics. Samantha appealed the Assistant Commissioner's decision, and on October 16, 1996, a hearing was held before the IHSAA Executive Committee. On October 28, 1995, the Executive

Committee issued its ruling upholding the decision of the Assistant Commissioner. On November 12, 1996, Samantha filed the present case with the Kosciusko Superior Court seeking to enjoin the IHSAA from enforcing its decision. The trial court granted Samantha's injunction, and the IHSAA now appeals.

On appeal the IHSAA raises two issues, which this Court consolidates on review: whether the trial court erred in granting Samantha's preliminary injunction enjoining the IHSAA from rendering Samantha ineligible to compete in high school athletics for a period of 365 days following her transfer from Tippy Valley to WCHS.

**\*416** **[1]** **[2]** The grant or denial of a preliminary injunction rests within the trial court's equitable discretion, and this Court will reverse only if the trial court's action constitutes a clear abuse of discretion. *L.E. Services v. State Lottery Com'n,* 646 N.E.2d 334, 349 (Ind.Ct.App.1995), *trans. denied.* Generally, the trial court considers four factors in determining the propriety of injunctive relief:

> (1) whether plaintiff's remedies at law are inadequate, thus, causing irreparable harm pending resolution of the action;
>
> (2) whether the plaintiff can demonstrate a reasonable likelihood of success on the merits;
>
> (3) whether threatened injury to the plaintiff outweighs the threatened harm the grant of relief would occasion upon the defendant; and
>
> (4) whether the public interest would be disserved by granting relief.

*Id.; Kennedy v. Kennedy,* 616 N.E.2d 39, 41 (Ind.Ct.App.1993), *trans. denied.* Ind.Trial Rule 52(A)(1) further requires a trial court to enter special findings of fact when it grants or denies a preliminary injunction.

**[3]** **[4]** **[5]** Review of the grant or denial of a preliminary injunction is limited to whether the trial court abused its discretion. *Kennedy,* 616 N.E.2d at 41. This Court will neither reweigh the evidence nor resolve factual controversies. *Id.* Instead, this Court looks to the special findings of fact to see whether they "validly support the [trial] court's decision." *Id.* (quoting *Fumo v. Medical Group of Michigan City,* 590 N.E.2d 1103, 1107–1108 (Ind.Ct.App.1992), *trans. denied* ). Findings will not be set

aside unless they are "clearly erroneous," meaning both "insufficient to disclose a valid basis for the legal result reached in judgment" and "unsupported by evidence of probative value." *Fumo,* 590 N.E.2d at 1108. This Court reviews the overall sufficiency of the evidence as a matter of law. *Id.* at 1107.

**[6]** **[7]** **[8]** **[9]** Specifically, the IHSAA contends that Samantha failed to demonstrate a probability of success on the merits. When reviewing IHSAA eligibility decisions, a trial court is limited to reviewing the record of the proceedings conducted before the IHSAA with respect to the factual determinations made by the IHSAA. The court may not reweigh the evidence or judge witness' credibility but simply analyzes the record as a whole, including both the record of proceedings before the IHSAA together with any properly admitted, relevant new evidence presented to the trial court, to determine whether the IHSAA's findings were supported by substantial evidence. *Ind. High School Athletic Ass'n v. Avant,* 650 N.E.2d 1164, 1168 (Ind.Ct.App.1995), *trans. denied; Kriss v. Brown,* 180 Ind.App. 594, 599–600, 390 N.E.2d 193, 197 (1979); *see also Terrell v. Palomino Horse Breeders of America,* 414 N.E.2d 332, 335 n. 23 (Ind.Ct.App.1980). However, the IHSAA's decision must be overturned when it is determined that the association acted arbitrarily and capriciously in making the decision. *See IHSAA v. Schafer,* 598 N.E.2d 540, 558 (Ind.Ct.App.1992), *trans. denied.*

The IHSAA's determination that Samantha was athletically ineligible was based on IHSAA Transfer Rule 19–4 governing transfer eligibility which states:

> To preserve the integrity of interschool athletics and to prevent or minimize recruiting, proselytizing and school 'jumping' for athletic reasons, regardless of the circumstances, student athletes who transfer from one school to a new school for *primarily athletic reasons* or as a result of undue influence will become ineligible to participate in interschool athletics in the new school for a period not to exceed 365 days from the date the student enrolls at the new school[.] ...

(Emphasis added.) A "[t]ransfer for primarily athletic reasons" is defined, but is not limited to:

> a. a transfer to obtain the athletic advantage of a superior, or inferior, athletic team, a superior athletic facility or a superior coach or coaching staff;
>
> b. a transfer to obtain relief from a conflict with the philosophy or action of an administrator, teacher or coach relative to athletics;
>
> c. a transfer seeking a team consistent with the student's athletic abilities;
>
> **\*417** d. a transfer to obtain a means to nullify punitive action taken by the previous school.

IHSAA Rule 19. Under Rule 19–5, a student who transfers with a corresponding change of residence to a new school district by the student's custodial parent(s) may be declared immediately eligible to participate provided the change of residence was bona fide. *Id.* As set forth in the rule:

> Determination of what constitutes a 'bona fide' change of residence depends upon the facts in each case, however, to be considered, the following facts **must** exist:
>
> a. the original residence must be abandoned as a residence; that is, sold, rented or disposed of, or in the process of being disposed of as a residence and must not be used as a residence by **any** member of the student's immediate family; and
>
> b. the student's entire immediate family must make the change and take with them the household goods and furniture appropriate to the circumstances. Under no circumstances can a single family unit have two or more residences for eligibility purposes.

IHSAA Rule 19.

The motivation behind Samantha's transfer to WCHS was a factual issue before the IHSAA. The trial court held that the IHSAA's decision declaring Samantha ineligible was arbitrary and capricious based on its finding that there was insufficient evidence to support the IHSAA's determination that the move was made primarily for athletic reasons.

In the present case, the uncontroverted evidence is clear that the Widemans' change of residence was "bona fide" as defined by the IHSAA rules. In August of 1996, the Widemans sold their home at its full list price and moved to Warsaw where they lived with James' father while awaiting the construction of their new home. Although the Widemans looked at land south of Warsaw, which was still in the Tippecanoe Valley School District, they ultimately decided to build a house near James' father in the area where James grew up. In Samantha's IHSAA transfer report, Duane Burkhart, Tippy Valley's Athletic Director, further stated that when he signed the question regarding Samantha's athletic eligibility at WCHS "yes/no," what he meant was that he believed that Samantha would be eligible as long as her parents sold their home in the Tippecanoe Valley School District and moved the family to Warsaw. Thus, by Burkhart's own admission, Samantha was eligible to compete in WCHS's athletic program.

The IHSAA contends that the trial court ignored the IHSAA's Finding No. 7(a)-(f) which sets forth instances demonstrating the Widemans' dissatisfaction with the Tippy Valley girl's basketball program. The evidence supporting these allegations is based primarily on handwritten affidavits from purported witnesses which were submitted on the day of the hearing and after the IHSAA Assistant Commissioner had made his decision. A large portion of the evidence was conflicting, unsubstantiated, and hearsay.

First, as to the subsection 7(a) regarding Penny telling Mike Walters and Steven Tucker during the 1994–1995 basketball season that if Burkhart was back the following year as coach, they were considering moving to Plymouth, Indiana. These statements have little bearing on this case as the Widemans did not move to Plymouth but rather moved to Warsaw for legitimate family reasons. Subsection (b) cites an incident in early December 1995 when the Widemans telephoned Athletic Director Burkhart after Samantha was dismissed from basketball practice. Burkhart remembers that at the time Penny threatened to move. Penny, however, does not remember threatening to move. Subsection (c) is based on hearsay in which John Parker, the father of another Tippy Valley player, told Burkhart that the Parkers were possibly moving away and that he heard the Widemans and Glingles had also discussed moving. The IHSAA's Finding 7(d) cites Diane Yarkin, President of the

Tippy Valley School Board, who stated that Penny had told her about the conversation with Burkhart. Yarkin, however, also testified that given the Widemans' family situations she believed that the Widemans had legitimate reasons for moving to Warsaw. Subsection (e) involves an incident in February *418 of 1996, when Penny Wideman and Luanne Parker requested a meeting to discuss the basketball program. In attendance at the meeting was Dr. Karen Boling, Superintendent of Tippy Valley; Yarkin; and Burkhart. Burkhart stated that at the meeting he asked Penny and Luanne whether they were considering moving. Yarkin, however, does not remember the conversation about moving. Finally, in subsection (f), the IHSAA cites statements which Burkhart alleged that Rita Price, a local radio announcer, had made to him at the Kosciusko County 4–H Fair. Price denied making the statements, and Burkhart himself acknowledged that if anything Price was passing on a rumor. The evidence supporting IHSAA Finding No. 7(a)-(f) is inconclusive at best and does not support the IHSAA's conclusion that Samantha's transfer to WCHS was motivated "primarily by athletic reasons."

The IHSAA's decision further ignores its own Findings Nos. 1–5 which uphold the conclusion that the Widemans' move was not athletically motivated. There is substantial evidence that the Widemans moved from Mentone to Warsaw primarily for legitimate family, health and employment concerns rather than athletic reasons. James and Penny Wideman both have elderly parents living alone in Warsaw. Penny's mother recently passed away, and her father is unable to independently care for himself and requires close monitoring and observation. Penny's father is now dependent on her to prepare his meals, transport him to medical appointments, buy his groceries and do his housecleaning. James and Penny also work in Warsaw. They each commute 25 to 30 minutes one-way along a winding road from Mentone to Warsaw. The frequent commutes were burdensome to both James and Penny and created hardships on their marriage and home life. Additionally, James' multiple sclerosis has worsened recently, in part, due to his workload and a loss of sleep. The Widemans admittedly expressed concerns about the civility of Tippy Valley's coaching staff in a meeting with school administrators in February of 1996. However, this cannot be considered evidence that Samantha's transfer was "primarily for athletic reasons." Additionally, James Wideman's inquiry into the academic ratings of other schools cannot be considered evidence to support the

IHSAA's decision. The Widemans had been considering moving nearer to Warsaw and cannot be criticized for checking other schools before finalizing their decision to move.

The IHSAA's suggestion that Samantha live with a relative or commute from Warsaw to Tippy Valley is in direct conflict with the philosophy underlying the IHSAA eligibility transfer rules. The stated philosophy of the IHSAA transfer rule provides in part:

  c. Standards governing residence and transfer are a necessary prerequisite to participation in interschool athletics because:

* * * * * *

  (6) they maintain the fundamental principle that a high school student should live at home with his/ her parents or legally-appointed guardian (if the parents are deceased) and attend school in the school district in which the parents or guardians live;

  (7) they reinforce the view that the family is a strong and viable unit in our society, and as such, is the best place for students to live while attending high school[.]

IHSAA Manual Rule 19. Clearly, Samantha's desire to live with her parents in Warsaw and to attend school in the district where they live is in keeping with the IHSAA's own philosophy. The trial court did not err in concluding the IHSAA's decision was arbitrary and capricious. Therefore, Samantha has a reasonable likelihood for success on the merits of the case.

IHSAA, relying on *Whiteco Industries, Inc. v. Nickolick,* 549 N.E.2d 396 (Ind.Ct.App.1990), also argues that the trial court failed to enter specific findings on each of the factors relative to granting a preliminary injunction. Initially, it is noted that the present case is substantially different from *Whiteco* where the trial court granted defendant's motion for a preliminary injunction without entering *any* findings of fact and conclusions of law as required by Ind.Trial Rules 52(A) and 65(D). Here, the trial court *419 entered numerous findings of fact and conclusions of law supporting its grant of Samantha's motion for preliminary injunction. The record discloses sufficient evidence to support these factors and the trial

court's conclusion that the IHSAA acted arbitrarily and that Samantha would suffer irreparable injury unless the enforcement of the IHSAA's decision was enjoined.

**[10]**  As previously discussed, there is substantial evidence in the record that Samantha did not transfer "primarily for athletic reasons" and that the IHSAA's ruling was arbitrary and capricious. The court also found that Samantha is a junior in high school and that the IHSAA's ruling would substantially impair her high school athletic career. These facts lead to the conclusion that Samantha's legal remedies were inadequate and that the enforcement of the ruling would cause her irreparable harm.

The IHSAA argues in footnote 8 of its appellants' brief that the threatened injury to the IHSAA members, in particular WCHS as a whole, outweighs any threatened harm to Samantha. In part, the IHSAA points to the IHSAA Restitution Rule, Rules 3–9 and 17–6. This Rule requires restitution in the event that an injunction, which allowed a student who was ineligible under the rules to participate, is later voluntarily vacated, stayed, reversed or finally determined to have been unjustified. Restitution may include forfeiture of games, return of individual or team awards, and return of funds received by schools in a tournament. In *Ind. High School Athletic Ass'n v. Avant,* 650 N.E.2d 1164 (Ind.Ct.App.1995), this Court specifically found this rule to be manifestly unreasonable, thereby upholding the trial court's decision prohibiting its enforcement against a student and member school. Additionally, the effect of Samantha's eligibility or ineligibility on WCHS girls' basketball program and its season competitors is too speculative in nature.

The IHSAA further contends that the trial court's ruling has an effect on the IHSAA's right to self-government. Decisions of the IHSAA, however, have long been held judicially reviewable even absent an expressed constitutional right. *See e.g., Haas v. So. Bend Comm. School,* 259 Ind. 515, 519, 289 N.E.2d 495, 497 (1972); *Avant,* 650 N.E.2d at 1167; *Schafer,* 598 N.E.2d at 547–550. Additionally, the trial court found that the IHSAA is a quasi-public institution and that there is an overriding public interest that it does not act arbitrarily in dealing with its member schools or their student athletes. Accordingly, this finding establishes that the public interest would not be disserved by granting Samantha injunctive relief from the enforcement of an arbitrary and capricious ruling by the IHSAA. The trial court did

Indiana High School Athletic Ass'n, Inc. v. Wideman, 688 N.E.2d 413 (1997)
122 Ed. Law Rep. 1268

not abuse its discretion by preliminarily enjoining the enforcement of the IHSAA's ruling. The judgment of the trial court is affirmed.

Affirmed.

STATON and DARDEN, JJ., concur.

**All Citations**

688 N.E.2d 413, 122 Ed. Law Rep. 1268

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

COMMONWEALTH OF KENTUCKY
MARSHALL CIRCUIT COURT
CIVIL ACTION NUMBER: 18-CI-000436

Z███ H███████, a minor                                    PLAINTIFF
by and through his Parent and
Next Friend, ZALMICO HARMON

v.

## MEMORANDUM OF LAW IN SUPPORT
## OF
## MOTION FOR TEMPORARY INJUNCTION

KENTUCKY HIGH SCHOOL ATHLETIC ASSOCIATION          DEFENDANT

Comes now the Plaintiff, Z███ H██████, a minor, by and through his Parent and Next

Friend, Zalmico Harmon, each by and through counsel, and provides the following Memorandum

of Law in support of his Motion for Temporary Injunction.

## MEMORANDUM

This appeal of the Final Order of the Defendant, KHSAA, dated November 15, 2018, and

Original Action is premised upon the Defendant's application of KHSAA Bylaw 6, commonly

known as the "Transfer Rule," Section 3(d), to the detriment of the Plaintiff, child.  KHSAA

Bylaw 6, Section 3(d) provides as follows:

> "A waiver of the period of ineligibility is not required to be granted for those students
> satisfying one of the exceptions in Sec. 2: ...

> d)   **If the change in schools is <u>motivated in whole or part</u> by a desire to
> participate in athletics at the new school,** including but not limited to:

> (1)   If a student participates on a school team that is coached by a coach
> associated in that same sport at a high school, and the student then
> transfers to the member school where the coach is employed (paid
> or volunteer at any level);

> (2)   If a student receives instruction (paid or unpaid) from a coach

1

associated in that same sport at a high school without expressed
consent of the enrolled school, and the student then transfers to the
member school where the coach is employed (paid or volunteer at
any level);

(3)    If a student participates on a nonschool (i.e. AAU, American
Legion, club settings, summer program, etc.) team that is affiliated
with or coached by a coach associated in that same sport at a
member school and the student then transfers to the member school
where a coach is employed (paid or volunteer at any level); or

(4)    If the student resides with any athletic coach or any other member
of the school staff or team member (including parents and
boosters)."

(emphasis supplied). In evaluating the intent behind the predecessor to the present Transfer

Rule, the Kentucky Court of Appeals has stated: "[t]transfer rule contained in By-law 6 is a valid

regulation intended to eliminate the pernicious practice of recruiting high school athletes."

Kentucky High School Athletic Ass'n v. Hopkins County Bd. of Ed., 552 S.W.2d 685, 687

(Ky.App. 1977). Yet, even a valid regulation may be applied in an invalid manner.

At the hearing, there was no evidence, testimony, or Findings in the KHSAA Final Order

indicating that the Plaintiff's child was recruited by Marshall County High School. While being

questioned by the KHSAA, Marshall County High School Athletic Director Mike Johnson

testified that he was not aware of any person recruiting the minor child on behalf of Marshall

County High School (Hearing Tape2 at 31:20). In addition, and also upon specific inquiry from

the KHSAA, Plaintiff specifically denied that his child was recruited to attend Marshall County

High School (Hearing Tape at 1:12:56 through 1:14:14).

Notwithstanding the foregoing, the KHSAA issued its Final Order, determining that the

Plaintiff's child was ineligible to participate in high school athletics, claiming that Plaintiff's

decision to attend Marshall County High School was motivated "in part by a desire to participate in athletics at the new school." (Final Order, Exhibit A to Complaint). In making this determination, the KHSAA arbitrarily and capriciously applied its rules toward the Plaintiff, and issued its Final Order without the support of substantial evidence. In point of fact, the KHSAA Final Order is grossly contrary to the evidence offered at the Hearing.

The Findings of Fact and Conclusions of Law set forth in the Final Order of the KHSAA can be accurately summarized as follows:

A.     Findings of Fact numbered as Paragraphs 1 through 8 are not disputed by Plaintiff.

B.     Findings of Fact Paragraphs numbered 9, 10, 11, 12, 13, 14, 15 and 16, contain incompetent, irrelevant and inadmissible evidence. As such, the Conclusions of Law based upon those Factual Findings; specifically, Paragraphs 32, 33, 34 and 35; are likewise arbitrary, capricious and an abuse of discretion.

C.     Conclusions of Law numbered 18 - 31 contain the KHSAA's recitation of its perception of the law to be applied in this action, and, as such, are not derivative of any Findings of Fact.

D.     Paragraph 36 is the only Conclusion of Law that addresses anything other than the incompetent evidence referenced in the preceding paragraphs, and addresses the Plaintiff's concerns relative to academics for his child.

E.     The conclusion of the Commissioner as found in Paragraph 37, is arbitrary, capricious and an abuse of discretion.

In sum, the Final Order was not supported by substantial evidence (see Numbered Final Order, Exhibit D to Complaint) and was issued in violation of KRS 13B.150(2), as follows:

I.     The Final Order of the KHSAA was issued without support of substantial evidence on the whole record, with the KHSAA making erroneous, arbitrary and capricious interpretation of the facts and law at issue.

II.     As it is written, KHSAA Bylaw 6, Section 3(d) lends itself to erroneous, arbitrary and capricious interpretation by the KHSAA and does not include sufficient safeguards which will protect the due process interests of affected individuals,

including the Plaintiff.

III.     As it is written, KHSAA Bylaw 6, Section 3(d) infringes upon the constitutional right of Plaintiff to parent his child and is deficient as otherwise provided by law.

IV.     Plaintiff was not provided with a Notice of Evidence to be utilized by the KHSAA against him in violation of the KHSAA's own Due Process Rules, Section 2(f)(1), and KRS 13B.090(3).

A discussion of each of these errors follows.

**I.     The Final Order of the KHSAA was issued without support of substantial evidence on the whole record, with the KHSAA making erroneous, arbitrary and capricious interpretation of the facts and law at issue.**

During the course of the hearing of this matter, KHSAA counsel initially questioned Plaintiff regarding the logistics of his Bona Fide Change in Residence as relative to Bylaw 6 (Hearing Tape1 at 6:40 to 14:51, 16:00 to 18:06).  Thereafter, KHSAA counsel inquired as to the reasons for Plaintiff's change of residence from Adair County to Marshall County following the conclusion of his child's 9th grade year (see Hearing Tape1 beginning at 18:07).  The Plaintiff's testimony in response to this line of questioning established the following undisputed facts:

A       While at Adair County, Plaintiff discussed with school administration about the ability of his child to finish high school in three years and be prepared academically for college (Hearing Tape1 at 21:00).

B.      During the child's 9th grade school year at Adair County, Plaintiff became concerned about that school's ability to academically prepare a child for college (Hearing Tape1 at 23:00 through 41:59).  Plaintiff discovered that the classes his child was enrolled in were not NCAA certified, contrary to prior representations by Adair County school officials (Hearing Tape1 at 23:39).

C.      After the child's course work was adjusted by Adair County (Hearing Tape1 24:28), Plaintiff remained concerned about that school because it could have caused his child to "lose a year" academically.  He was left with a bad feeling about the academics at Adair County (Hearing Tape1 at 25:17).

D       Plaintiff's child did not pass an End of Course Examination (EOC) necessary for

4

him to graduate in three years, notwithstanding the fact that he had received A's in
the underlying courses at Adair County (Hearing Tape1 at 27:30).

E.  Plaintiff did not believe his child was being challenged at Adair County (Hearing
Tape1 at 26:25) and that Adair County was not equipped to take care of his child
academically (Hearing Tape1 at 40:20).

F.  Plaintiff specifically testified that "It is my job as a parent to make sure he is
somewhere getting what he will need to prepare him for the future, and I was not
comfortable with Adair County (Hearing Tape1 at 34:10).

Relative to the Plaintiff's relocation to Marshall County and the child's transfer to Marshall

County High School, the Plaintiff testified as follows:

A.  Plaintiff testified that in order to learn about the academics at Marshall County, he
called the school and set up an appointment with Principal Patricia Greer on April
2, 2018 (Hearing Tape1 47:15, 49:15).

B.  At that meeting, Plaintiff informed Principal Greer of his academic goals for his
child and sought information on what that school could offer academically.
Plaintiff discussed block scheduling available at Marshall County.  This was
attractive to Plaintiff because his son could take more core classes.  Plaintiff "was
impressed with what the school offered to address what my son needs to get
through school on the academic side." (Hearing Tape1 beginning at 36:50).

C.  In response to the following question from KHSAA counsel "What attracted you
to Marshall County, the academics, the athletics or both?"  Plaintiff replied
academics (Hearing Tape1 at 46:50).

D.  When asked by KHSAA counsel as to the role the Marshall County Athletic
Program played in his decision to relocate to Marshall County, upon repeated
inquiry, **Plaintiff specifically testified that athletics it did not play a role in his
decision, on more than one occasion**.  (Hearing Tape at 51:51 to 53:24, and
1:11:52, Hearing Tape2 at 28:06 ).

E.  He further stated that the basketball team at Marshall County was not a factor in
the decision to relocate (Hearing Tape2 at 28:06).

F   Plaintiff specifically testified as follows: "For me as a parent, I have to address
the academic side to open up as many doors as possible for him, because I don't
know what he is going to choose, and I want him to be prepared to handle it
academically if he chooses to go to a Stanford or a Harvard, I don't want him to

5

struggle on the academic side" (Hearing Tape1 at 41:20).

G.     Plaintiff testified that what his child needs from a school is that it be able to meet the academic requirements to prepare him for college so that he can perform at a high level academically at that college. (Hearing Tape at 57:45)

H.     After explaining the course of decisions Plaintiff made for his older son in high school and college, Plaintiff stated "It is my responsibility as a parent to make the decision for him as far as the school that he goes to, are they able to prepare him for that next level." (Hearing Tape2 at 23:21)

I      Plaintiff additionally testified that the decision to relocate to Marshall County was due to the fact that he had been involved in a car accident (Hearing Tape1 beginning at 42:00). Plaintiff is a registered nurse by occupation and currently works as a travel nurse in the Greater Washington D.C. area. Prior to the car accident, Plaintiff would drive to his employment every other weekend from Adair County. Following the car accident, Plaintiff could no longer make the drive and was required to fly to work. He testified that the commute from Adair County to an airport was difficult. Taking into consideration his concerns about his son's academic situation and the distance to and from an airport, he decided that he needed to find a new school for his child at the conclusion of his 9th grade year that met both of those requirements. The areas that he initially identified were the Louisville, Lexington and Paducah areas, and the schools nearby (Hearing Tape1 at 45:25). He chose Marshall County because it was a rural area, with a slower pace where his child could focus on academics (Hearing Tape1 at 50:49).

J.     The child, Z███ H██████, testified that he focuses on the academics for high school (Hearing Tape1 at 1:12:35).

K.     Plaintiff testified as follows: "We are talking about a young man, that we are trying to put in the best possible situation to max out and get to where he is going in life, to prepare him for the schools that he is being recruited by." (Hearing Tape at 6:05). He continued by stating that athletically, his son can go to any school, because he performs at the highest level. In making a school decision, Plaintiff stated, "it's always for me on the academic side (Hearing Tape1 at 40:51)

L.     At Hearing Tape2 at 31:09, the KHSAA ceased questioning the Plaintiff and inquired of representatives of Marshall County High School in attendance. Marshall County High School Athletic Director Mike Johnson testified that the move made by Plaintiff to Marshall County was not motivated in whole or part by athletics (Hearing Tape2 at 31:48).

6

The foregoing testimonial evidence was undisputed by the Defendant, KHSAA. Rather than address the above, the KHSAA elected to focus on incompetent evidence.

Initially, the KHSAA inquired as to where the Plaintiff's child attended school prior to entering the 9th grade, for a total of Seventeen Minutes and Thirty six seconds (17:36)(Hearing Tape1 at 58:06 through 1:15:30). This same ground was plowed again by the KHSAA later in the Hearing (Hearing Tape2 at 20:30 and Hearing Tape2 at 29:04). KHSAA Bylaws, "Case BL-6-1- What is the transfer rule (Bylaw 6)?," explicitly provides as follows:

> "Bylaw 6 contains restrictions relative to students changing schools after they have BOTH been in grade nine AND played for a member school at the varsity level. A student who has not yet been in grade nine or has not yet participated at the varsity level has no restrictions on transfer within Bylaw 6."

As such, the KHSAA considered evidence that was clearly irrelevant to these proceedings and outside the scope of its regulatory authority. Notwithstanding this line of inquiry by the KHSAA, Plaintiff reiterated his intent to have his child focus on academics in high school and a slower pace of life (Hearing Tape at 1:07:20).

Thereafter, the KHSAA questioned Plaintiff regarding a discussion with *Paducah Sun* reporter Edward Marlowe (hereafter, Marlowe) that was turned into an opinion piece in that newspaper on May 25, 2018, and introduced into evidence by the KHSAA (Hearing Tape1, 1:15:30 through 1:17:15 and Hearing Tape2 0:00 through 29:04). All in all, the KHSAA explored this newspaper article for a grand total of Thirty Minutes and Forty Nine Seconds (30:39), constituting more than twenty-five percent of the entirety of the Hearing.

The information contained in the *Paducah Sun* article is impermissible hearsay as prohibited from KRS 13B proceedings by KRS 13B.090(1), KRE 402 and the common law of

the Commonwealth of Kentucky.  KRS 13B.090(1) provides, in relevant part, as follows:

> "The hearing officer shall exclude evidence that is irrelevant, immaterial, unduly
> repetitious, or excludable on constitutional or statutory grounds or on the basis of
> evidentiary privilege recognized in the courts of this Commonwealth. Hearsay evidence
> may be admissible, if it is the type of evidence that reasonable and prudent persons would
> rely on in their daily affairs, but it shall not be sufficient in itself to support an agency's
> findings of facts unless it would be admissible over objections in civil actions."

Plaintiff testified that Marlowe initiated the conversation and did not tell him that a

newspaper article was going to be written (Hearing Tape2 at 7:27), and described his telephone

conversation with Marlowe as a "discussion of basketball in general" (Hearing Tape2 at 5:35).

Plaintiff simply responded to Marlowe's questions about First Region Basketball in general and

Marlowe's generalized promotion of First Region Basketball, with it sounding like Marlowe was

trying to recruit Z█ H█ to the First Region of Kentucky (Hearing Tape2 at 8:50 through

16:45, 30:04).  "In determining whether the competent evidence is substantial, the usual

standards apply. 'The test of substantiality of evidence is whether when taken alone or in the

light of all the evidence it has sufficient probative value to induce conviction in the minds of

reasonable [people].'"  Drummond v. Todd County Bd. of Educ., 349 S.W.3d 316, 322 (Ky.

App. 2011)(internal citations omitted).

The Marlowe *Paducah Sun* Article is the very definition of hearsay and none of the

exceptions to the hearsay rule are applicable. KRE 801, et seq..  None of the usual indicia of

reliability or accuracy are present; instead, the article contains Marlowe's opinions regarding a

telephone discussion with Plaintiff.  Plaintiff specifically testified that the content of the article

was as follows:

    A.      Marlowe's "perception" (Hearing Tape at 5:35),

8

B.     Concerning the media in general, stated "people look for things to sell papers and draw attention" (Hearing Tape at 5:35),

C.     "All they are trying to do is sell the paper" (Hearing Tape at 6:35), and.

D.     They take your words and twist your words (Hearing Tape at 6:35).

It must be noted that the Paducah Sun article is in no way, shape, form or fashion the best of evidence of the conversation between Marlowe and Plaintiff.  See KRE 1001 et seq..  The highest Court in Kentucky has held:

> "[I]n presiding over an administrative proceeding, the hearing officer is permitted to accept hearsay evidence which is reliable, but which would not be admissible in court. See KRS 13B.090(1). However, when the time comes to make a factual determination, the residuum rule requires the fact-finder to base a decision on only the competent evidence: "When the evidence is all in, it must be sifted and assorted. The competent separated from the incompetent, and out of the testimony there must come some reliable and substantial evidence, as understood by the common-law rules of evidence upon which a verdict must rest."

Cabe v. City of Campbellsville, 385 S.W.2d 51, 54 (Ky. 1964)(quoting Valentine v. Weaver, 191 Ky. 37, 228 S.W. 1036, 1038 (1921)).

As set forth above, no less than Forty Eight minutes of a Two Hour Hearing was consumed by the KHSAA in entering incompetent evidence.  In the Final Order, Findings of Fact Paragraphs numbered 10, 11, 12, 13, 14, 15 and 16, were based solely upon the *Paducah Sun* Article (see Numbered Final Order, Exhibit D to Complaint).  With the exception of the first two sentences of Paragraph 9 of the Final Order, the remainder of said Paragraph recites information regarding where the Plaintiff's child attended school prior to entering the 9th grade which is not relevant to the inquiry of the KHSAA.  "Irrelevant evidence must be excluded.  See KRE 402." Drummond, supra p. 8, 349 S.W.3d at 323.  "We have held that a ruling is arbitrary and

9

capricious only where it is "clearly erroneous, and by 'clearly erroneous' we mean unsupported by substantial evidence." National Collegiate Athletic Ass'n v. Lasege, 53 S.W.3d 77, 85 (Ky. 2001)(internal citation omitted).

The Factual Findings and Conclusions of Law flowing therefrom were not supported by substantial evidence, and, in point of fact, were developed from incompetent and irrelevant evidence. Further, the KHSAA ignored the clear and explicit testimony of the Plaintiff as set forth above. "Logically speaking, a conclusion is flawed when it flows from an invalid premise." Id. at 86. Unlike the Lasege case, the KHSAA's Final Order is lacking in evidentiary support, as its conclusion that Plaintiff's child that is ineligible to participate in high school athletics ignores the testimony provided by Plaintiff as set forth above.

Based upon the foregoing, the Final Order of the KHSAA was issued without support of substantial evidence on the whole record in contravention of KRS 13B.150(2)(c).

**II.    As it is written, KHSAA Bylaw 6, Section 3(d) lends itself to erroneous, arbitrary and capricious interpretation by the KHSAA and does not include sufficient safeguards which protect the due process interests of affected individuals, including the Plaintiff.**

The Fourteenth Amendment to the United States Constitution provides that "[n]o state...shall deprive any person of life, liberty or property without due process of law." Plaintiff contends that the unfettered discretion granted to the KHSAA by virtue of KHSAA Bylaw 6, Section 2(d), is violative of the due process rights of the Plaintiff's minor child. This is due to the fact that the KHSAA may deprive a child of participation in certain athletic activities in accordance with a provision which has no standard of proof. Simply put, the KHSAA may deny a child participation in KHSAA sanctioned athletics if only "part" of the reason for the

10

change in schools is motivated by athletics.

"If a student transfers from one school to another because of a change in the residence of his parents, the transfer is involuntary on the part of the student. The student has no real choice but to follow the change of residence of the parents." Kentucky High School Athletic Ass'n v. Hopkins County Bd. of Ed., supra p. 2, 552 S.W.2d at 688. The determination of whether a parent changes a school for a child is never based upon one single factor, but rather a panoply of same.

Under the current incarnation of KHSAA Bylaw 6, Section 2(d), if the KHSAA perceives only a scintilla of information which it considers to be indicative that a school determination by a parent and child is based upon athletics, it may arbitrarily and capriciously prevent the child from participating. Certainly, a determination by the KHSAA under this Bylaw as written cannot be considered as supported by substantial evidence as required by KRS 13B. This is certainly true in this action, as the KHSAA utilized incompetent information from the *Paducah Sun* article to support its perception in contravention of the weight of the evidence offered at the hearing.

Based upon the foregoing, KHSAA Bylaw 6, Section 2(d) does not contain sufficient safeguards which will protect the due process interests of affected individuals, including the Plaintiff and, as such, is unconstitutional under the Fourteenth Amendment to the United States Constitution in that it lends itself to arbitrary and capricious application by the KHSAA.

**III.    As it is written, KHSAA Bylaw 6, Section 3(d) infringes upon the constitutional right of Plaintiff to parent his child and is deficient as otherwise provided by law.**

"Without doubt, (the Fourteenth Amendment) denotes not merely freedom from bodily restraint but also the right of the individual to...establish a home and bring up children...and

11

generally to enjoy those privileges long recognized at common law as essential to the orderly

pursuit of happiness by free men." Meyer v. State of Nebraska, 262 U.S. 390, 398 (1923). It is

without dispute that the right to raise one's children is fundamental constitutional right.

As previously stated, the KHSAA "[t]transfer rule contained in By-law 6 is a valid

regulation intended to eliminate the pernicious practice of recruiting high school athletes."

Kentucky High School Athletic Ass'n v. Hopkins County Bd. of Ed., supra p. 2, 552 S.W.2d at

687. By virtue of the delegation of authority from the Kentucky Board of Education to the

KHSAA "to manage interscholastic athletics," there is no dispute that the KHSAA has the ability

to regulate high school athletics. 702 KAR 7:065, and the KHSAA Constitution, Article III,

Section 1(a). However, this regulatory ability is not absolute.

KHSAA Bylaw 6, Section 3(d), as written serves as an unconstitutional restriction upon a

parent's constitutional right to raise a child in that the KHSAA may arbitrarily, capriciously and

without the support of substantial evidence, restrict the activities in which a child may

participate. The United States Supreme Court has stated that "[t]he rights ...to raise one's

children have been deemed 'essential,'...'basic civil rights of man',...and 'rights far more

precious...than property rights'" Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 1212, 31

L.Ed.2d 551 (1972).   In the case at bar, the actions of the KHSAA serve to unconstitutionally

restrict the ability of Plaintiff's child to participate in certain activities, particularly since the

KHSAA may do so with the most minimal of support for its position.

Based upon the foregoing, KHSAA Bylaw 6, Section 3(d), as written, is an

unconstitutional restriction upon a parent's fundamental right to raise a child and is deficient as

otherwise provided by law.   In addition to those reasons set forth above, said Bylaw should be

12

declared unconstitutional.

**IV.**   **Plaintiff was not provided with a Notice of Evidence to be utilized by the KHSAA against him in violation of the KHSAA's own Due Process Rules, Section 2(f)(1), and KRS 13B.090(3).**

As previously stated, the KHSAA questioned Plaintiff regarding his discussion with

*Paducah Sun* reporter Edward Marlowe and the article published on May 25, 2018, and

introduced into evidence by the KHSAA at the Hearing (Hearing Tape1, 1:15:30 through 1:17:15

and Hearing Tape2 0:00 through 29:04).

All in all, the KHSAA explored this newspaper article for a grand total of Thirty Minutes

and Forty Nine Seconds (30:39).  Six out of fifteen of the Commissioner's Findings of Fact

found in the Final Order were based on the content of the *Paducah Sun* article.  "The most basic

due process rights are notice and the opportunity to be heard." Drummond, supra p. 8, 349

S.W.3d at 324)(citing Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363

(U.S. 1914)).  While Plaintiff was certainly provided with an opportunity to be heard, he was not

provided with notice of evidence to be utilized by the KHSAA against his child,  in violation of

the KHSAA's own Due Process Rules, Section 2(f)(1) and KRS 13B.090(3).  This was

particularly unfair to the Plaintiff, as he was sandbagged by the KHSAA and asked direct

questions about a telephone call in May 2018, which was turned into a sensational newspaper

article, over four months later.

In addition to the reasons set forth above, because the *Paducah Sun* was not disclosed

pursuant to KHSAA's own Due Process Rules, Section 2(f)(1) and KRS 13B.090(3), it should

not have been utilized or allowed at the hearing.  The fact that so many of the Final Order

Findings of Fact and Conclusions of Law were derivative of this incompetent evidence, the

ruling of the Commissioner in such Final Order should be overturned. "Logically speaking, a conclusion is flawed when it flows from an invalid premise." National Collegiate Athletic Ass'n v. Lasege, supra p.10, 53 S.W.3d at 86.

Based upon the foregoing, any and all Findings of Fact and Conclusions of Law in the KHSAA Final Order based upon the *Paducah Sun* article should be stricken as 'fruit of the poisonous tree.'" Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984)(internal citations omitted).

## CONCLUSION

"An erroneous application of the law by an administrative board or by the circuit court is clearly reviewable by this Court. Also, where an administrative body has misapplied the legal effect of the facts, courts are not bound to accept the legal conclusions of the administrative body." Epsilon Trading Co., Inc. v. Revenue Cabinet, 775 S.W.2d 937, 940 (Ky.App. 1989)

Based upon the foregoing and pursuant to KRS 13B.150(2), Plaintiff requests that this Court reverse the Final Order of the KHSAA, in whole or in part, and remand the case for the Defendant to enter a Final Order declaring the Plaintiff, Z█ H█████, to be eligible to participate in high school athletics, upon the bases that said Final Order, was in violation of constitutional provisions; without support of substantial evidence on the whole record; was arbitrary, capricious, or characterized by abuse of discretion; and/or deficient as otherwise provided by law under KRS 13B.150(2).

As the Kentucky Court of Appeals has stated "'[i]t is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street.'" V.S. v. Com., Cabinet for Health and Family Services, 194

14

S.W.3d 331, 335 (Ky.App.  2006).

      **WHEREFORE**, Plaintiff requests as follows:

1.      For a Temporary Injunction to issue forthwith, pending a final outcome on the merits of this action, following a hearing on same; and for

2.      Any other relief to which the Plaintiff may appear entitled.

                            Respectfully submitted,

                            William C. Adams, III
                            Attorney at Law
                            291 Main Street; P.O. Box 1419
                            Murray, Kentucky 42071
                            Telephone: (270) 753-1292
                            Telefax: (270) 753-5648
                            Attorney for Plaintiff

## NOTICE

      You are hereby notified that the foregoing Motion will be submitted to the Marshall

Circuit Court, 80 Judicial Drive, Benton, Kentucky  42025, for its consideration at the

hour of 2:00 P.M., Central Time on the 14th day of December, 2018, or as soon thereafter as

meets the convenience of the court.

                            William C. Adams, III

15

## CERTIFICATE OF SERVICE

I, William C. Adams, III, do hereby certify that a true and accurate copy of the foregoing

was sent by ordinary U.S. Mail and as specifically set forth below to all of the following on this

the 10th day of December, 2018:

Hon. Andrew Beshear
Kentucky Attorney General
118 Capitol Building; 700 Capital Avenue
Frankfort, KY 40601

Chad Collins, Esq.,
Kentucky High School Athletic Association
2280 Executive Drive
Lexington, Kentucky 40505
And via email

and the Original filed with the Marshall Circuit Court.

_____
William C. Adams, III

16