UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-190-TBR

Z.H.,                                                                           PLAINTFF

V.

KENTUCKY HIGH SCHOOL
ATHLETIC ASSOCIATION,                                                           DEFENDANT

**MEMORANDUM AND OPINION AND ORDER**

This case comes before the Court on Plaintiff's Motion for Preliminary Injunction and Stay of Enforcement of Final Order of the Defendant. (R. 5). The matter has been fully briefed, and the Court held a hearing on the matter on January 3, 2019, at which the parties presented oral argument. The Court being otherwise sufficiently advised, this matter is ripe for decision.

BACKGROUND

The Plaintiff ("Z") is a prominent high school basketball player, expected to be aggressively recruited by division one universities across the country. In May of 2018, Z transferred from Adair County High School to Marshall County High School following a move from Columbia Kentucky to Benton Kentucky. Upon transferring, the Plaintiff and his father sought waiver of Kentucky High School Athletic Association ("KHSAA") Bylaw 6 from the KHSAA.

KHSAA Bylaw 6 restricts the athletic eligibility of transferring students. Pursuant to Bylaw 6, a transferring student-athlete, who has played in at least one varsity game after starting ninth-grade, is ineligible to participate in athletics at the school transferred to for one year. The

period begins from the date of the last varsity game played at the school transferred from.

However, there are exceptions to ineligibility due to transfer listed in Bylaw 6 Section 2. Relevant here, Section 2 provides an exception for student-athletes that have transferred due to a "bona fide change in residence." But even if a student-athlete qualifies for an exception under Section 2, they may still be found ineligible under Bylaw 6 Section 3. Section 3 states in pertinent part: "A waiver of the period of ineligibility is not required to be granted for those students satisfying one of the exceptions in Sec. 2. … If the change in schools is motivated in whole or part by a desire to participate in athletics at the new school. …"

The Ruling Officer for the KHSAA denied Z's initial request for waiver. Z appealed that decision at which point a hearing was held before an independent Hearing Officer. Throughout the hearing Z and his father maintained that the transfer from Adair County to Marshall County was motivated by academics, a desire for Z to graduate in three years, a desire to be in close proximity to an airport due to Z's Father's job in Maryland, and a slower life style conducive to their Christian values. Z's father was questioned about Z's four transfers prior to the ninth-grade and admitted those transfers were, at least in part, motivated by athletics. But he never wavered from his position that the transfer from Adair to Marshall, which occurred after the ninth-grade, was not motivated in whole, or in part, by athletics. According to Z and his father, where Z played was irrelevant. He was going to excel athletically at any school and had already developed the skills necessary to garner scholarship offers from around the country. Instead, Z's father testified at the hearing that it was more important for Z to select a high school that would prepare him for the academic rigors of college than it was for him to select a high school for athletic motivations.

Towards the hearing's end, Z's father was confronted with an article printed in the Paducah Sun on May 25, 2018 based on a phone conversation he had with the article's author, Edward Marlow. The Article, titled "Harmon heading to Marshall County? Not just yet, says dad," contains several direct quotes from Z's father including the following:

> "I know it's really good competitive with good coaching," [Z's father] said of the First Region. "But I think there has to be a balance between coaching and overall development. Because after a while, if you go 10 years and can count on one hand the number of players that played Division I out of the region you begin to question—are they overcoaching?"

> "The problem that I have with this is, I'm a little apprehensive about how … as a freshman . . . Z led the state in scoring. Played for USA Basketball, plays on the EYBL circuit. I understand the competitive coaches, but the players Z played against with USA Basketvall and EYBL? It's a whole different level. And he's over (1,500) high school points already."

> "I don't want [Z] to be in a situation where, you know, as a freshman . . . he was good. And after a summer (like this) . . . he's obviously going to be a much better player. I don't want him to come into a situation where it's more about the coach."

Z's father admitted to giving the interview and making the statements therein but claimed that some of his words were taken out of context and "twisted." He explained that his quotes only reflected "his perception" of high school basketball and coaching in Kentucky, and that his

statements were made in response to Marlow trying to sell him on Region One basketball's attributes. Z indicated that his father's comments were made in response to what sounded like Marlow recruiting for Region One. Upon being repeatedly pressed by the KHSAA about the specific quote, "I don't want [Z] to come into a situation where it's more about the coach," Z's father reluctantly stated that he "had to have said something like that," but that it was "a while ago." After admitting to saying something similar to the quote in the article, the KHSAA asked Z's father the following question: "With a kid as good as Z, you're going to take [whether the coach is more about himself than the players] into consideration before you enroll your child at that school, right?" Z's father answered, "yes, it's a consideration to think about." Z's father testified that neither himself, nor Z, had met the Marshall County basketball coach prior to Z enrolling at Marshall County. However, Z's father had met with the Marshall County Principal Patricia Greer, according to Z's father, for academic purposes. Principle Greer confirmed at the hearing that she met with Z's father to discuss academics at Marshall County.

Following the hearing, the Hearing Officer issued a recommended order to be approved by the KHSAA Commissioner. The recommended order contained findings of fact and conclusions of law, which supported the initial Ruling Officer's determination that waiver of Bylaw 6 not be granted, and Z remain ineligible.

The KHSSA Commissioner, Julian Tackett, issued a Final Oder on November 15, 2018. In it, the Hearing Officer's recommended order was set aside, and separate findings of fact and conclusions of law were issued, as required by KHSAA due process. The Commissioner determined that there had been a bona fide move qualifying Z for an exception under Section 2, but that Z should remain ineligible pursuant to Section 3 because the record reflected that Z's transfer was motivated, at least in part, by the desire to participate in athletics. In coming to the

conclusion that Z's transfer was in part athletically motivated, the Final Order relies on the Paducah Sun article, Z's Father's statement at the hearing indicating that coaching is always a consideration, and Z's transfers prior to ninth-grade.

Following the final order, Z's father filed suit on his behalf in Marshall County Circuit Court against the KSHAA. The KSHAA removed the case pursuant to 28 U.S.C. § 1331. The Plaintiff now moves the Court for a preliminary injunction that would allow him to participate in varsity basketball at Marshall County High School while this litigation is pending. A hearing was held in the matter on January 3, 2019 at which the Court heard oral argument.

STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Accordingly, "[t]he granting or denial of a preliminary injunction is within the sound judicial discretion of the trial court." *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 260-61 (6th Cir. 1977). In determining whether to issue a preliminary injunction, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc.*

*v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Notably, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

DISCUSSION

    A. Whether Z likely succeeds on the Merits

While the Court must weigh all four factors when determining whether to grant a preliminary injunction, the movant's likelihood of success on the merits is more often than not the paramount consideration. Candidly, the Court has struggled in determining whether Z has demonstrated a strong likelihood of success on the merits. It is a close call, and the Court is aware of the impact its decision will have on not only Z, but high school basketball players and programs across the state. The Court is also aware that this issue may well be moot before it reaches the substantive stages of the litigation process and the implications that has on the Court's current decision. *See NCAA v. Lasege*, 53 S.W.3d 77, 83 (Ky. 2001) ("Because athletic seasons are usually completed before either a final decision on the merits by the trial court or appellate review, a [trial] court's ruling granting or denying a temporary injunction will typically, as a practical matter, decide the issue of whether a student-athlete competes.") While only basketball, the Court recognizes that the opportunities provided by extracurricular athletics have the potential to shape young lives. Suffice it to say the Court does not approach this matter lightly. With this in mind, the Court turns to Z's substantive arguments.

Z makes three substantive claims: (1) Bylaw 6 violates the Fourteenth Amendment, (2) Z, nor his father, were provided with notice of the evidence to be used against him at the administrative hearing in violation of the KHSAA's due process rule Section 2(f)(1) and KRS

13B.090(3), and (3) the Final Order was unsupported by substantial evidence in violation of KRS 13B.150(2)(c). The Court will address each claim's likely success in turn.

1. Z's Fourteenth Amendment Claims Likely Fail.

Z makes several arguments claiming Bylaw 6 violates the Fourteenth Amendment. All Z's arguments are either underdeveloped or contrary to well-settled law. First, Z argues Bylaw 6 "lends itself to erroneous, arbitrary and capricious interpretation by the KHSAA and does not include sufficient safeguards which protect the due process interests of affected individuals, including the Plaintiff" because of Section 3(d). Section 3(d) reads in pertinent part:

> A waiver of the period of ineligibility is not required to be granted for those students satisfying one of the exceptions in Sec. 2…If the change in schools is motivated in whole or part by a desire to participate in athletics at the new school…

According to Z, the language "in whole or in part" allows the KHSAA to declare student-athletes ineligible "based on scintilla of information which it considers to be indicative that a school determination by a parent and child is based upon athletics." As such, Z claims that Section 3(d) runs afoul of KRS 13B's requirement that any final state agency action be supported by "substantial evidence."

KHSAA responds that Z is confusing the two requirements. KHSAA argues that the Section 3(d) is separate and distinct from KRS 13B's evidentiary standard, which is applicable to it—not in competition with it. According to the KHSAA, Section 3(d) allows the KHSAA to determine a student-athlete ineligible if a transfer decision was motivated in part by athletics, but KRS 13B requires that the KHSAA have substantial evidence on which it based its conclusion. In other words, KRS 13B and Section 3(d) overlap and must be read together so as to require the KHSAA to have substantial evidence that the transfer was motivated, in whole or in part, for athletic purposes. The Court agrees. KRS 13B imposes an evidentiary standard independent from

7

and applicable to Section 3(d). Thus Section 3(d) does not authorize the KHSAA to determine students ineligible based on a "scintilla of information" or violate due process. Z's claim likely fails.

Next, as best the Court can tell, Z seems to be claiming that the phrase "in whole or in part" makes Bylaw 6 unconstitutionally vague under the Fourteenth Amendment. Z's argument, to the extent he makes one here, is unconvincing. Bylaw 6 implicates no constitutional or fundamental right. *See Seger v. KHSAA*, 453 F.App'x 630, 633-635 (6th Cir. 2011) (holding that KHSAA Bylaws implicate no fundamental or constitutional rights because there is no constitutional right to participate in extracurricular athletics, and the parent's constitutional right to control their children's education does not extend to control their participation in extracurricular athletics") Therefore, the Court's evaluation of whether Bylaw 6 is unconstitutionally vague must be "fairly lenient." *Sherwood v. TVA*, 925 F. Supp. 2d 906, 926 (E.D. Tenn. 2013) (quoting *Doe v. Staples*, 706 F.2d 985, 988 (6th Cir. 1983)). So lenient, in fact, that to constitute a deprivation of due process, Bylaw 6 must be so "vague and indefinite as really to be no rule or standard at all." *Id.* "in other words, 'it must be substantially incomprehensible.'" *Id.* The Court concedes that Bylaw 6 Section 3(d)'s phrase "in whole or in part" grants the KHSAA a very broad standard by which to declare transferring student-athletes ineligible. However, a broad standard is not unconstitutionally vague, and the Plaintiff has not demonstrated that Bylaw 6's standard is incomprehensible, nor has he demonstrated that it is so indefinite as to be no rule at all. The rule is broad, but it is clear—student-athletes are declared ineligible for one year if their transfer was motivated, even in part, by the desire to play athletics. Z's success here is unlikely.

It also appears that Z might be making an equal protection claim under the Fourteenth Amendment. If that is the case, he fails to demonstrate a substantial likelihood of success on the issue. Again, Bylaw 6 implicates no constitutional or fundamental right, nor does it discriminate based on suspect or quasi-suspect classification. Therefore, Bylaw 6 is only subject to rational basis review. *See Seger*, 453 F. App'x at 633-635 (holding that a KHSAA Bylaw was only subject to rational basis review because it did not discriminate based on a suspect or quasi-suspect classification nor interfere with the exercise of any fundamental right). Under rational basis review, the Court presumes validity. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). Z has done nothing to overcome that presumption. While KHSAA argues that Bylaw 6 furthers the legitimate purpose of restricting transfers motivated by athletics, which in turn discourages pernicious recruiting tactics and protects the student-athlete's home and educational cohesion, Z offers no evidence, or even argument, to the contrary. Thus, Z's fails to demonstrate likely success on the issue.

Finally, Z claims that Bylaw 6 violates substantive due process under the Fourteenth Amendment by interfering with his father's fundamental right to parent his child. It does not. Z's father has a right to parent his child, which includes the right to control his child's education. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 972 (6th Cir. 2004) ("Both the Supreme Court and this court have repeatedly recognized that parents have a fundamental right to raise their children, including directing their children's education."). However, Bylaw 6 does nothing more than restrict Z's right to participate in high school athletics. Z's father's right to control Z's upbringing and education does not extend so far as to allow him to demand his son be allowed to participate in high school athletics without restriction. *Seger*, 453 Fed. Appx. at 634 ("The fundamental right of parents to control the education of their children does not extend to a right

to demand that their children be allowed to participate without restrictions in extracurricular sports in the educational setting that the parents have freely chosen."). Thus, Z's claim that Bylaw 6 interferes with his father's fundamental right to parent his child all but certainly fails.

2. Z' claim that the KHSAA Violated Their Own Due Process Rules and KRS 13B.090(3) Likely Fails.

Z claims that the KHSAA violated Section 2(f)(1) of their own Due Process Rules and KRS 13B.090(3) when they failed to notify him that they planned to use the Paducah Sun article against him. KHSAA Due Process Rule Section 2(f)(1) notes that the KHSAA must comply with KRS 13B.090. Thus, the only real question is whether the KHSAA was required to disclose the Paducah Sun article to Z prior to the hearing. KRS 13B.090(3) grants a party to an administrative action "the right to inspect, at least five (5) days prior to the hearing, a list of all witnesses every other party expects to call at the hearing, and the available documentary or tangible evidence relating to an administrative hearing either in person or by counsel." It does not, as the KHSAA points out, require automatic disclosure. Z had the right to inspect any evidence the KHSAA planned to introduce at the hearing. The KHSAA was not required to volunteer such evidence without request. Z offers no evidence, or even allegation, that he ever made such a request. As such, the Court cannot say that Z has demonstrated likely success on the issue.

3. The Court is not Confident Z's Claim that the Final Order was Not Based on Substantial Evidence Succeeds.

The Final Order cites three primary pieces of evidence—Z's prior transfers, the statements attributed to Z's father by the Paducah Sun article, and the statement that "coaching is a consideration to think about" made by Z's father at the hearing. Z argues that Z's prior transfers are irrelevant, that the Paducah Sun quotes, and his father's testimony about them, are

hearsay, and that the KHSAA Commissioner issued the Final Order without substantial evidence. The Court will address each issue individually.

First, Z argues that his previous transfers are irrelevant because they occurred prior to the ninth-grade. The KHSAA failed to respond to this argument both in their briefing and at the hearing. In any event, the Court agrees with Z that the transfers prior to the ninth-grade are irrelevant. KRS 13B.090(1) states in pertinent part that "[i]n an administrative hearing . . . [t]he hearing officer shall exclude evidence that is irrelevant, [or] immaterial. . . ." *See also Drummond v. Todd Cty. Bd. of Educ.*, 349 S.W.3d 316, 323 (Ky. Ct. App. 2011) ("Irrelevant evidence must be excluded [from an administrative hearing]."). Bylaw 6 only concerns itself with transfers made after starting the ninth-grade, and Z's motivations for prior transfer have no bearing on his current motivations. Up until the ninth-grade Z could transfer schools without penalty or prohibition. Thus, the Court finds Z's prior transfers irrelevant and the Final Order's reliance on them improper.

Next, Z argues that the testimony by Z's father concerning the Paducah Sun article is inadmissible hearsay. The KHSAA responds that Z's father's testimony regarding the article falls within the party-opponent exception to hearsay pursuant to KRE 801A. The Court agrees. Z's father acted as his representative at the hearing and continues to do so in this litigation. Therefore, Z's father's statements made at the hearing concerning the Paducah Sun article fit within the party-opponent exception to hearsay provided by KRE 801A.

Finally, the Court must determine the ultimate issue of whether the evidence considered, as a whole, is substantial. Frankly, the Court finds this issue to be the real crux of the matter. As an initial concern, the Court recognizes that, pursuant to KRS 13B.150, it is bound to the administrative record, and that the Court may not reweigh the evidence. Instead, the Court must

only determine whether the Final Order is supported by substantial evidence. *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 307 (Ky. 1972). Substantial evidence is defined as "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Id.* The Court recognizes the standard is a deferential one. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) ("The substantial-evidence standard allows considerable latitude to administrative decision makers."); *Curd v. Ky. State Bd. of Licensure for Prof'l Eng'rs & Land Surveyors*, 433 S.W.3d 291, 304 (Ky. 2014) ("Admittedly, [the substantial evidence standard] is largely a deferential standard of review."). The KHSSA must be "allowed to 'paddle their own canoe' without unwarranted interference from the courts." *NCAA v. Lasege*, 53 S.W.3d 77, 83 (Ky. 2001). With this required consideration in mind, the Court turns to the evidence cited by the Final Order.

Excluding the evidence of Z's past transfers as irrelevant leaves only the Paducah Sun article and the testimony given at the hearing. KHSAA points to three quotes in the article attributed to Z's father that they claim are substantial evidence of the fact that Z's transfer was athletically motivated. They are listed above, but bear repeating here:

> 1)
>
> "I know it's really good competitive with good coaching," [Z's father] said of the First Region. "But I think there has to be a balance between coaching and overall development. Because after a while, if you go 10 years and can count on one hand the number of players that played Division I out of the region you begin to question—are they overcoaching?"

2)

"The problem that I have with this is, I'm a little apprehensive about how … as a freshman . . . Z led the state in scoring. Played for USA Basketball, plays on the EYBL circuit. I understand the competitive coaches, but they players Z played against with USA Basketvall and EYBL? It's a whole different level. And he's over (1,500) high school points already."

3)

"I don't want [Z] to be in a situation where, you know, as a freshman . . . he was good. And after a summer (like this) . . . he's obviously going to be a much better player. I don't want him to come into a situation where it's more about the coach."

The Court must consider the evidence in the record as whole, including the quotes above. As such, the Court must consider these statements in conjunction with the testimony given at the administrative hearing. Z's father testified at the hearing that these quotes were simply his "perception of coaching in the region," and that he was merely commenting on "basketball in general." This provides some plausible context for the first two quotes.

But there is a third quote. And this quote is undeniably something other than a general comment about basketball. After some initial waffling, Z's father finally says, "I'm not denying I said it. . . I'm sure I had to say something similar to that." He then directly testifies that whether "the coach is all about the coach" is indeed "a consideration to think about." This direct testimony, coupled with the Paducah Sun quotes—particularly the third one—rises, just barely, to the level of substantial evidence.

The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). This case lies within that zone. Z's father's statement at the hearing, in conjunction with the Paducah Sun quotes cited herin, are enough to substantiate the KHSAA's decision. Had the Court been the original fact finder, it might have gone the other way. This case was a close call. However, the substantial evidence standard is a deferential one. Ultimately, the Court cannot substitute its judgment for that of KHSAA. *Robbins v. Ky. High Sch. Ath. Ass'n*, Civil Action No. 5: 12-355-DCR, 2012 U.S. Dist. LEXIS 181695, at *14 (E.D. Ky. Dec. 26, 2012) (citing *Lasege*, 53 S.W.3d at 83). Thus, the Court not say with confidence that the KHSAA's Final Order was not based upon substantial evidence.

No likelihood of success on the merits is usually fatal, and this case is no exception. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."). However, in the interest of being thorough, the Court will proceed to the other Four factors.

A. Irreparable Harm

When considering whether the movant will suffer irreparable harm, the Supreme Court has made clear that the focus should be on whether the injury is irreparable not the type of injury sustained. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974). ("The key word in this consideration is irreparable."). Here, while the injury may seem trivial—the inability to participate in varsity athletics. It is no doubt irreparable. Z cannot go back in time and participate in the games he misses. Nor can he be compensated for them. The Court understands

that Z is permitted to play in junior varsity games. While this may mitigate the harm suffered by Z, it does not alleviate it. Thus, the Court finds that Z will suffer some irreparable injury. This factor weighs slightly in Z's Favor.

B. Substantial Harm to Others

The Court is aware of the potential harm created by improperly allowing Z to play in varsity games. If Z plays, someone else that deserves to does not. If Z plays, programs are affected across the state. The outcomes of games, seasons, and even state championships are most likely changed. Moreover, the Court is aware that the KHSAA has a strong interest in seeing its Bylaws upheld. However, if Z is improperly prohibited from playing, those same games, seasons, and even championships are equally changed. Furthermore, just as if he were allowed to improperly play, when Z is improperly prohibited from playing, a young man that has worked hard and deserves to play on the varsity squad does not. Finally, just as the KHSAA has an interest in seeing its Bylaws upheld, players across the state have a strong interest in seeing those Bylaw's checked when applied in an arbitrary or abusive fashion.

Unfortunately, according to the Court's calculous, there is potential for great harm on both sides of the equation. The Court finds that this factor does not necessarily tip the scale to one side or the other.

C. The Public Interest

The Court finds that this factor neither weighs for or against either side. The public has both an interest in seeing the KHSAA's Bylaws upheld and seeing them applied properly.

CONCLUSION AND ORDER

The Court cannot say confidently that Z likely succeeds on the merits here, and a preliminary injunction is an extreme remedy. Therefore, after analyzing and balancing the four required factors, this Court reluctantly finds that the requested preliminary injunction is not warranted in this matter.

IT IS ORDERED.

For the reasons enumerated above, Plaintiff's Motion for a Preliminary Injunction, (R. 5), is DENIED.

A telephonic conference is hereby set for 1/15/2019 at 10:45 AM Central Time. The Court will place the call to the Parties.

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

January 11, 2019

cc. Counsel